[Crim. No. 829.   Third Appellate District.—May 11, 1925.]

## THE PEOPLE, Respondent, v. HUGH R. SPRADO, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT—VERDICT—VALUE OF PROPERTY.— In a prosecution for embezzlement under section 508 of the Penal Code, a verdict finding the defendant "guilty of the crime of petit embezzlement included within said charge of embezzlement as charged in the information, and hereby fix the value of the property then and there embezzled under $200," is sufficiently direct and certain; and it is not necessary that the jury should have specifically found and fixed the value of the property.

[2] ID. — FELONY EMBEZZLEMENT — LESSER OFFENSE — VERDICT.—The crime of petit or misdemeanor embezzlement is embraced within the crime of felony embezzlement; and where the information charges the crime of felony, embezzlement, but the jury finds the defendant guilty of the lesser offense, it should so declare in its written verdict, in language sufficiently clear to indicate beyond any doubt that the accused has been found guilty of the lesser

offense than that directly charged in the information, but it is not necessary that the finding in that regard should be in any particular form of language.

[3] ID.—REASONABLE DOUBT AS TO VALUE—EVIDENCE—FINDING—VERDICT.—In such a prosecution, where the jury, after considering the evidence as to value, entertains a reasonable doubt upon the question whether the property appropriated by defendant was of value amounting to more or to less than $200, and it is not able to fix the exact value thereof, it should give the defendant the benefit of such doubt and find him guilty of the lesser offense.

[4] ID.—"PETIT" EMBEZZLEMENT—VERDICT — EVIDENCE — JUDGMENT.— While misdemeanor embezzlement is not characterized in the code as "petit embezzlement," the word "petit" bears a well-understood legal signification as used in our Penal Code, and, hence, the designation in a verdict of the lesser of the two offenses included within the crime of felony embezzlement charged in the information as "petit embezzlement" is not at all inappropriate, particularly where the record sufficiently discloses that the defendant was guilty of embezzlement and the trial court experienced no difficulty in determining from the verdict the legal effect and scope thereof, as evidenced by its judgment of sentence in accord with the penalty authorized in cases of misdemeanor embezzlement.

[5] ID. — FRAUDULENT APPROPRIATION — INTENT—TIME.—In a prosecution for embezzlement under section 508 of the Penal Code, it is wholly immaterial at what time the property has been fraudulently appropriated by the clerk, agent, or servant, or at what time the intent so to appropriate it may be formed—whether before or after his employment has ceased—if it be shown that such property came into his control or care by virtue of his employment.

[6] ID.—RELEVANT EVIDENCE—INTRODUCTION ON REBUTTAL.—Although the better practice, when testimony is not rebuttal but is offered after the party against whom it is offered has closed his case, is for the party offering it to ask permission to reopen his case for that purpose, it is not an abuse of discretion to allow the evidence to be introduced on rebuttal, if such evidence is relevant and material.

[7] ID.—EVIDENCE — CONVERSATION WITH DEFENDANT — ADMISSIONS— FOUNDATION.—In a criminal prosecution, it is not necessary for the prosecution to show, as a prerequisite to the introduction of testimony of a conversation had with the defendant, the place where, the persons present and the time when the conversation took place, where the question calling for the conversation is not for impeachment purposes, but calls for testimony of a substantive

5. Construction of phrase "by virtue of employment or office" in embezzlement statute, note, 15 **Ann. Cas.** 443. See, also, 10 **Cal. Jur.** 248.

fact, or a statement of the defendant not amounting to a confession, but merely what is technically called in law an admission.

[8] ID.—DRAWING OF CHECK IN NAME OF WIFE—RIGHT TO EXPLANATION—ERROR WITHOUT PREJUDICE.—In a prosecution for embezzlement under section 508 of the Penal Code, where it is developed by the prosecution in making its case that the third party to whom defendant sold the appropriated property paid for the same by a check drawn in the name of defendant's wife, and said third party testifies that the check was so drawn at the request of the defendant himself, the defendant should be allowed to explain how he came to have the check so drawn; but the error of the court in sustaining the prosecution's objection to questions designed to elicit such information will not be held to have resulted in a miscarriage of justice where the guilt of the defendant is conclusively shown by the evidence.

[9] ID.—ERRONEOUS REJECTION OF EVIDENCE—ARGUMENT OF DISTRICT ATTORNEY.—In such prosecution, the district attorney in his argument before the jury is within his rights when he calls attention to the circumstance of the check having been drawn at the request of the defendant in the name of the latter's wife, notwithstanding the trial court may have committed error in refusing to allow the defendant to explain why the check was so drawn.

[10] ID.—USE OF ASSUMED NAME — IMPROPER CROSS-EXAMINATION—In this prosecution for embezzlement under section 508 of the Penal Code, in view of the large amount of evidence of the defendant's guilt, it could not be said that a miscarriage of justice resulted from the act of the district attorney in asking the defendant, on cross-examination, whether, prior to a certain date, he purchased or rented phonograph equipment from a certain music house under a specified assumed name, stating that he was a member of a certain club, where, after defendant had answered the question in the affirmative, his counsel moved to strike the answer out "for the purpose of making an objection," and the motion being allowed, then objected to the question on the ground that it was not cross-examination and that the question was incompetent, irrelevant, and immaterial.

[11] ID.—PERMISSION TO RETAIN PROPERTY—CONVERSATION WITH SUCCESSOR—AGENCY—EVIDENCE.—In such a prosecution, prejudicial error may not be predicated upon the refusal of the trial court to permit the defendant to give the substance of a conversation with a certain person, at defendant's home, a few days after defendant left the employment of the corporation whose property he is accused of having appropriated, in the course of which conversation said person, so the defendant testified, gave the defendant permission to retain possession of the property in question for the purpose of disposing of it, where the testimony is objected to upon the ground that said person has not been shown to have been

the agent of the corporation at the time the conversation was had, and, therefore, not shown to have the authority to bind the corporation to any arrangement he might have made with the defendant as to the property, and later, upon such agency being shown, the defendant is permitted to give the substance of such conversation.

[12] ID. — REFUSAL TO GIVE INSTRUCTIONS — APPEAL — INSUFFICIENT BRIEFS.—Where an appealing party desires to predicate reversible error on the refusal of the trial court to give certain requested instructions, it is the duty of his counsel to show the appellate court how the trial court erred in refusing to give the instruction; and, where counsel in their briefs merely say, "The court's attention is also called to the rulings of the trial court in refusing to give the instructions asked for by defendant and which are numbered 7, 11, 12 and 13," it is not for the appellate court to examine the record to determine whether the instructions were pertinent, or, if pertinent, whether they were or were not covered by the general charge of the court.

[13] ID.—ERRONEOUS REMARKS OF JUDGE OR COUNSEL—REVERSIBLE ERROR.—A judgment of conviction will not be reversed because of the fact that the district attorney or the judge might have passed some remark or remarks which should not have gone before the jury, unless it can justly be said that such remarks were so grossly improper as irresistibly to lead to no other conclusion than that the rights of the defendant were thereby seriously prejudiced and he, therefore, was denied a fair and impartial trial according to the law of the land.

[14] ID.—IMPEACHMENT OF WITNESSES—PRIOR ARREST—USE OF ASSUMED NAME.—The legislature has specifically described the manner in which a witness may be impeached, and the methods thus pointed out are exclusive; and the mere fact that a witness may, at some time, have been arrested for some crime, is not a ground upon which a witness may be impeached; and where the evidence of the defendant's guilt appears conclusive, the appellate court will not conclude that a miscarriage of justice resulted from the act of the district attorney in asking the defendant in a criminal prosecution, on cross-examination, as to his prior arrest under, or his use of, an assumed name. (Opinion on denial of rehearing.)

(1) 20 C. J., p. 492, n. 5, p. 493, n. 12.   (2) 20 C. J., p. 492, n. 6.   (3) 20 C. J., p. 493, n. 12.   (4) 20 C. J., p. 492, n. 5.   (5) 20 C. J., p. 487, n. 65.   (6) 17 C. J., p. 306, n. 32.   (7) 16 C. J., p. 627, n. 81.   (8) 17 C. J., p. 334, n. 96.   (9) 16 C. J., p. 898, n. 98. (10) 17 C. J., p. 317, n. 10.   (11) 17 C. J., p. 335, n. 13.   (12) 17 C. J., p. 275, n. 39.   (13) 17 C. J., p. 297, n. 20.   (14) 17 C. J., p. 321, n. 45.

12. Sec 2 Cal. Jur. 728.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wallace Shepard and Clifford A. Russell for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant, upon an information filed in the superior court in and for the county of Sacramento, was charged with and tried for felony embezzlement and convicted of petit embezzlement and thereupon sentenced to serve a term of six months in the county jail of the said county. He duly made an application for a new trial, and the same was denied. He prosecutes this appeal from the judgment of conviction and the order denying his motion for a new trial.

The information was based on section 508 of the Penal Code, which provides: "Every clerk, agent, or servant of any person who fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of another which has come into his control or care by virtue of his employment as such clerk, agent, or servant, is guilty of embezzlement."

Section 514 of said code provides that "every person guilty of embezzlement is punishable in the manner prescribed for feloniously stealing property of the value of that embezzled."

Section 487 of said code provides: "Grand larceny, is larceny committed in either of the following cases: 1. When the property taken is of a value exceeding two hundred dollars; . . . ," and section 488 provides that "larceny in other cases is petit larceny." Section 489 of said code fixes the penalty for grand larceny at "imprisonment in the state prison for not less than one nor more than ten years," and section 490 provides that the punishment for petit larceny shall be by "fine not exceeding five hundred dollars, or by imprisonment in the county jail not exceeding six months, or both."

The information charges that the defendant "on the —— day of February, A. D. 1924, in the said county of Sacramento, in the said state, . . . , was then and there the clerk, agent, and servant of Kimball-Upson Company, a corporation, . . . , and doing business in the county of Sacramento, and then and there by virtue of his said employment as such clerk, agent and servant, then and there came into his possession, care, custody and control of him, the said Hugh R. Sprado, radio equipment of the value of $246, in gold coin of the United States, the personal property of the said Kimball-Upson Company, . . . , and he, the said Hugh R. Sprado, after the said radio equipment had come into his possession, care and custody, as aforesaid, did then and there, to-wit, in the City of Sacramento, County of Sacramento, State of California, on said —— day of February, A. D. 1924, unlawfully, fraudulently, and feloniously convert, embezzle and appropriate the same to his own use, not in the due and lawful execution of his trust as such clerk, agent and servant," etc.

The points made for a reversal, stated in the language and the order in which they are stated in appellant's brief, are: "1. That the verdict of the jury is not direct and certain and cannot be considered by the court; 2. That the evidence does not support the verdict; 3. That the errors of the trial court were prejudicial to appellant; 4. That the court erred in denying defendant's motion for an instructed verdict after the prosecution had concluded its case."

[1] 1. The verdict reads as follows: "We, the jury in the above-entitled cause, find the defendant Hugh R. Sprado guilty of the crime of petit embezzlement included within said charge of embezzlement as charged in the information, and hereby fix the value of the property then and there embezzled under $200 and recommend that probation be granted defendant."

The recommendation of probation for the accused was disregarded by the court, but that fact is inconsequential, in so far as are concerned the points urged against the validity of the verdict, as above explained. The court delivered to the jury the several written forms of verdict covering any conclusion, within the record as made by the information and proofs, which they might, upon a consideration of the

case, conceive it to be their duty to reach and declare. Among the forms so submitted to the jury was the following: "We, the jury in the above-entitled cause, find the defendant Hugh R. Sprado, guilty of the crime of embezzlement as charged in the information and hereby fix the value of the property then and there embezzled at $——." It will be noted that the jury, in formulating their verdict, did not follow that form. The contention that the verdict is not direct and certain is predicated upon the fact that the jury did not specifically find and fix the value of the property alleged to have been fraudulently, and contrary to his trust, converted and appropriated by the defendant to his own use. There is no merit to the contention. [2] The crime of petit or misdemeanor embezzlement is, admittedly, embraced within the crime of embezzlement as charged in the information, and the jury having determined that the defendant was guilty of the lesser offense, it was, of course, necessary that they should so declare in their written verdict, but it was not necessary that the finding in that regard should be in any particular form of language. If, in such case, the verdict as returned is in language sufficiently clear to indicate beyond any doubt that the accused has been found guilty of the lesser offense than that directly charged in the information, it is enough. The verdict fully measures up to this test. It is not necessary that the jury should have specifically found and fixed the value of the property. The evidence might have been such, according to the jury's view thereof, that the triers could not have fixed precisely or even with satisfactory approximation the value of the property. [3] Again, it might happen, as probably it did happen in this case, that the jury, after considering the evidence as to value, entertained a reasonable doubt upon the question whether the property was of value amounting to more or less than $200, but were yet not able to fix the exact value thereof, and, if so, it was their duty to give the defendant the benefit of such doubt, and, being convinced by the evidence that he had embezzled the property, find him guilty of the lesser and not of the higher offense charged. If, therefore, the general finding as to value was all that there was to the verdict as an indication of the crime of which it was the design and inten-

tion of the jury to find the defendant guilty, no one then
reading the verdict or hearing it read, having in view the
fact that for the lesser offense the penalty is the same as that
authorized to be imposed for petit larceny, could for an
instant doubt that in effect it declared that accused was
guilty of the lesser offense of the two included within the
crime as charged. But it will be seen that, as indicative
of the intention to find the defendant guilty of the lesser
offense, the verdict contains more than the mere finding as
to value in the finding preceding that of value, to wit:
" . . . guilty of *petit* embezzlement, *included* within said
charge of embezzlement as charged in the information."
This language itself, without regard to what the verdict
contains as to value, makes it perfectly clear that the offense
of which the jury found the accused guilty was that of mis-
demeanor embezzlement. [4] While misdemeanor embezzle-
ment is not characterized in the code as "petit embezzle-
ment," the word "petit," bears a well-understood legal
signification as used in our Penal Code. In common parlance,
it means anything petty or small. Employed in our code
for the purpose of defining a crime, it means an offense of
less gravity than a felony. For instance, larceny, as seen,
is divided by the Penal Code into grand and petit, the first
a felony, punishable by imprisonment in the state prison,
and the latter a misdemeanor, punishable by fine or im-
prisonment in the county jail, or by both fine and imprison-
ment. Hence, the designation in the verdict of the lesser
of the two offenses included within the crime charged in
the information as "petit embezzlement" is not at all in-
appropriate. Thus at once there is conveyed to the mind
the thought that the smaller or lesser and not the greater
of the two offenses so charged is referred to. It may be
added that the trial court experienced no difficulty in de-
termining from the verdict the legal effect and scope thereof,
for the judgment of sentence was in accord with the penalty
authorized in cases of misdemeanor embezzlement. So, if
the evidence sufficiently disclosed that the accused was guilty
of embezzlement, he suffered no prejudice from the awkward
form of language in which his guilt was declared.

2. The verdict is sufficiently supported. The evidence
shows that the defendant was, for several years and down

to March 1, 1924, in the employ of the Kimball-Upson Co., and as such was manager and in charge of the radio equipment department of said corporation; that he was permitted by the corporation to take radio sets from the store for the purpose of testing them, he being required to charge against himself on the books such sets as he might so take; that, previously to the last of February, 1924, he was notified by the corporation, through an authorized officer thereof, that, after the said last day of February, his services for and in connection with the corporation were to terminate or cease; that, on the twenty-eighth day of February, 1924, he was asked by Mr. Kimball, a member of said corporation, whether every article of merchandise he had theretofore taken from the store had been returned to the store, to which question the defendant returned an affirmative answer. The evidence further shows that the particular radio set with the wrongful conversion of which he is charged had not been at that time, nor was it at any subsequent time, returned to the store by the accused. It was also shown that, in the month of April, 1924, the defendant sold to one Rasmussen a radio set for the sum of $256. Rasmussen identified the set shown him in court by the district attorney as the one he purchased from defendant at the time mentioned and which had previously been identified by the witness Kimball, president of Kimball-Upson Co., as the set which the defendant had taken from the store of the corporation while he was manager of the radio department thereof. It was further shown that no record of the removal of said set from the store had ever been made in the book used for that purpose.

The defendant made no denial of having the radio set in his possession at the time he severed his connection with the Kimball-Upson Co., or that it belonged to the latter. He did deny, however, that he was asked by Kimball or any other person connected with the corporation whether he had returned to the store all the merchandise he had removed therefrom. He stated that he retained possession of the property with the consent of and understanding with one Deatrick, who succeeded him (defendant) as manager of the radio department of the corporation, that he was to sell the set and pay the proceeds of the sale to the corporation; that in April, 1924, he sold the property to Rasmussen

for $256 and received payment therefor in the form of a
check, which, at his request, Rasmussen drew in the name
of his (defendant's) wife; that he did not turn the money
received for the set over to the corporation until the month
of September, 1924, after investigation was started to ascer-
tain the whereabouts of the set and when a demand was for
the first time made upon him for the payment of the money.
He stated that his procrastination in the matter of the pay-
ment of the money received for the radio set was due to the
fact that no bill for the property or no demand for the
money so received had been sent to or made upon him by
the corporation. Deatrick positively denied giving his con-
sent to the retention by defendant of the radio equipment
and stated that, while he knew that a radio equipment was
missing from the store, he did not know with certainty that
defendant had possession thereof; that after he had learned
that the defendant had the set in his possession, he, with
other employees of the corporation, proceeded in an attempt
to secure either the radio set or the money paid to the de-
fendant on the sale thereof. Deatrick also testified that
when he first interviewed the defendant concerning the
property the latter made to him three different statements
regarding his possession of the property. One of these state-
ments was to the effect that B. A. Mitchell, assistant general
manager of the corporation, had given him (defendant)
permission to retain and dispose of, if he could, the property.
Said Mitchell denied, however, that he gave any such per-
mission to defendant. He said that he asked defendant how
and when he got possession of the set and that the latter
said that in the month of January he had it in his possession
at his home, that he returned it on January 31st for the pur-
pose of having it inventoried with the other property in the
store, and that immediately thereafter and before leaving
the store he had again taken it with him and had retained
it until he sold it.

The foregoing is a sufficient statement of the testimony to
show that the verdict is well buttressed, evidentially. [5]
But the specific point urged under this assignment is that,
to establish the crime of embezzlement against the accused,
it was necessary to show not only that he had possession of
the articles constituting the radio set, but that he conceived

or formed the intent fraudulently to convert them to his
own use prior to the date of his retirement from the service
of the corporation, or, in other words, while he was still in
the employ of the corporation. We do not conceive this to
be a correct view of the law. The statute (sec. 508, Pen.
Code) upon which the information herein is founded de-
clares, as will be seen, that every clerk, agent, etc., who
fraudulently appropriates to his own use, or secretes with
a fraudulent intent to appropriate to his own use, "any
property of another which has come into his control or care
*by virtue of his employment as such clerk, agent, or ser-
vant,"* is guilty of embezzlement. It is clear that it is
wholly immaterial under said section at what time the prop-
erty has been fraudulently appropriated by such clerk,
agent, or servant, or at what time the intent so to appro-
priate it may be formed—whether before or after his em-
ployment as such clerk, etc., has ceased—if it be shown that
such property has come into his control or care by virtue
of his employment as such clerk, etc. As to the particular
property belonging to another, which has come into the con-
trol or care of a clerk, agent or servant, by virtue of his
employment as such clerk, agent, or servant, such clerk, etc.,
so long as he retains the control or care of such property,
is the agent of the owner thereof, even though his employ-
ment as such clerk or servant or agent has ceased. But,
aside from these considerations, the testimony to the effect
that, when asked by the president of the corporation, just
prior to his final severance from connection with the corpo-
ration as an employee thereof, whether he had returned to
the store and the possession of the corporation all the articles
of merchandise he had on prior occasions removed from the
store, the defendant answered that he had, and the further
testimony that, after he had terminated his connection with
the corporation he sold the radio set, afforded a very strong
inference that the defendant had formed the intent to ap-
propriate the set to his own use either before or on the day
his employment with the corporation ceased. Indeed, we
think this testimony is sufficient to support the conclusion,
if it were necessary to concede that such conclusion is of
material consequence in determining whether the verdict
stands secure against successful assault, that the intent
to appropriate the property was formed by the defendant

during the course of his employment as the manager of the radio department of the corporation.

[6] 3. Certain rulings assigned as erroneous and prejudicial to the rights of the accused require consideration herein. The district attorney, calling the witness Kimball, after the defendant had closed his case, asked said witness whether he had a conversation with the defendant on the twenty-ninth day of February, 1924, in the course of which he (witness) asked the defendant "if he had any of your merchandise in his charge," and to which question the defendant answered in the negative. To that question the defendant objected upon the ground that it did not call for rebuttal testimony, and, further, because the proper foundation had not been laid for the proof of such conversation, in that the "time, place and persons present" were not stated or given. Assuming that the testimony was not strictly rebuttal, it was, nevertheless, relevant and material, and we cannot say that it would be an abuse of the court's discretion in allowing it, although the proper practice, when testimony is not rebuttal, but is offered after the party against whom it is offered has closed his case, is for the party offering it to ask permission to reopen his case for that purpose. In all such instances, or at least as a general rule, where the testimony is relevant and material, and not cumulative of other testimony ample to support the fact to the proof of which the alleged rebuttal testimony is addressed, such motions are allowed, and doubtless in this case, as we may assume from the ruling allowing it, the court would have granted such motion had one been made by the district attorney. So, the testimony being relevant and material, it cannot be said that the defendant was prejudiced as a result of the ruling allowing it. We have assumed, without intending to hold, that the testimony was not rebuttal in the technical sense.

[7] It was not necessary to show, as a prerequisite to the introduction of testimony of the conversation in question, the place where, the persons present and the time when the conversation took place. The question calling for the conversation was not for impeachment purposes. It called for testimony of a substantive fact, or a statement by the defendant not amounting to a confession but merely what is technically called in law an admission—that is, a statement

72 Cal. App.—38

which might be pregnant with the admission of a circumstance which, considered with other facts and circumstances, may tend to the establishment of the guilt of the accused. Of course, the defendant was at liberty, on cross-examination, to inquire into the particular circumstances under which the conversation occurred, including the time and the place and the persons present.

[8] It was developed by the prosecution in making its case that the party to whom the defendant sold the radio set paid for the same by a check drawn in the name of defendant's wife. The witness Rasmussen, to whom the radio set was sold, testified that the check was so drawn at the request of the defendant himself. The attorney for the defendant sought to secure an explanation from his client of the reason for having the check made out in his wife's name, but an objection by the district attorney to the question designed to elicit that information was sustained. When arguing the case to the jury the district attorney put special emphasis on the fact that the check was so drawn, and, in effect, declared that it was a strong circumstance tending to show an effort on the part of the accused to cover up his crime, or to prevent, as far as it might, disclosure of the fact that the radio set was not the property of the Kimball-Upson Company. No good reason occurs to us why the court refused to allow the defendant to explain how he came to have the check drawn in his wife's name. Whether he could have explained the circumstance in a plausible or a reasonable way is not material upon the question of the admissibility of the testimony thus sought to be brought out by the defendant. It was a circumstance more or less of an incriminatory nature, when considered by the light of the other facts and circumstances of the case, and the accused was entitled to explain it, if he could, and, of course, it would have been for the jury to determine whether the explanation was or was not a satisfactory one or whether it would or would not have the effect of destroying its apparent inculpatory force. In brief, the question was proper cross-examination and should have been allowed. But the guilt of the defendant seems to have been conclusively shown by the evidence, and, therefore, no miscarriage of justice could have followed from the ruling. (Sec. 4½, art. VI, Const.) [9] Of course, the district attorney in

his argument before the jury was within his rights when he called attention to the circumstance of the check having been drawn at the request of the defendant in the name of the latter's wife. The fact that it would be error for a court to refuse to allow a defendant to explain, if he desired to and could do so, some competently presented circumstance which might damage his defense, would not constitute a reason for denying to the district attorney the right to make the most of such circumstance in his argument to the jury as in support of the theory of guilt, and, as we have stated, the circumstance here being considered was relevant, material, and competent.

[10] The defendant, on cross-examination, was asked by the district attorney whether, prior to July 1, 1922, he purchased or rented a phonograph equipment from the "Hauschildt Music Company" under the name of Lewis, stating that he was a member of the Olympic Club of San Francisco, which question he answered in the affirmative. After the answer was returned defendant's counsel moved to strike the answer out "for the purpose of making an objection," and the motion being allowed, then objected to the question on the ground that it was not cross-examination and that the question was incompetent, irrelevant, and immaterial. The question was improper and the alleged testimony sought thereby to be elicited wholly inadmissible. But there is nothing either upon the face of the question or the affirmative answer thereto which could have tended to reflect upon the character of the accused but what might be implied from the fact that, at the time of the transaction referred to, he assumed a name different from that under which he was proceeded against in this case. There was nothing wrong, so far as the question and the answer upon their face show, in the purchasing or hiring of the phonograph. The defendant himself seems to have regarded the transaction as one the occurrence of which he was not afraid to admit, for he appears to have answered the question unhesitatingly, even before his counsel could interpose objection thereto. Indeed, it may well be concluded that the fact that the purchasing or hiring of the phonograph was, so far as anything to the contrary is shown here, perfectly legitimate, would seem to negative rather than to carry the implication of suspicion or wrong or guilty knowledge with

which the fact that an accused has committed some wrongful act under a pseudonym is ordinarily pregnant. But, waiving consideration of that suggestion, it certainly cannot be held, in view of the large amount of proof of the defendant's guilt, that the question and the answer thereto, even when put side by side with the other errors pointed out by the defendant and so considered, produced a miscarriage of justice in the instant case.

[11] There is absolutely no ground for the complaint that the court erred in refusing, in response to objection by the district attorney, to permit defendant to give the substance of a conversation with the witness Deatrick, at the home of the former, a few days after the defendant had left the employment of the corporation, in the course of which conversation Deatrick, so the defendant testified, gave the defendant permission to retain possession of the radio equipment for the purpose of disposing of it. The objection to the testimony was upon the ground that Deatrick had not been shown to be the agent of the corporation at the time the conversation was had, and, therefore, not shown to have the authority to bind the corporation to any arrangements he might have made with the defendant as to the radio set. The objection was technically well founded; but later it was shown that Deatrick was the agent of the corporation, with authority to negotiate arrangements with others as to articles of merchandise which were sold by the Kimball-Upson Company, and upon that showing the court allowed the defendant to state the conversation inquired about by his attorney, and he (defendant) did state said conversation or the substance thereof.

Other alleged errors founded upon the rulings of the court receiving and excluding certain evidence are complained of. These assignments we have carefully examined and have found no merit to many of the objections, while, as to others, the errors are so inconsequential that, when compared to the vast amount of proof of guilt, it may well be declared, as we do declare, that they were innocuous in their effect upon the substantial rights of the accused. No miscarriage of justice followed from the errors now referred to.

[12] Counsel for the defendant, in their brief, say: "The court's attention is also called to the rulings of the trial court in refusing to give the instructions asked for by de-

fendant and which are numbered 7, 11, 12 and 13.'' This is all that is said by the defendant in relation to said instructions. Nowhere is it pointed out wherein the instructions were not properly rejected. It is not for this court to examine the record to determine whether the instructions were pertinent, or, if pertinent, whether they were or were not covered by the general charge of the court. It was the duty of counsel to show this court how the court erred in refusing to give the instructions. (*People* v. *Chutnacut*, 141 Cal. 682, 685 [75 Pac. 340] ; *People* v. *McLean*, 135 Cal. 302, 309 [67 Pac. 770] ; *People* v. *Cebulla*, 137 Cal. 314, 317 [70 Pac. 181].)

[13] There is a general criticism throughout the brief of counsel for the defendant of the conduct of the court and the district attorney in the trial of the case, it being asserted that both those officers were guilty of misconduct. We have read the record carefully and cannot say that the court and the district attorney transcended the line of their duty in the management and the trial of the cause. Of course, it is to be said that in all warmly contested cases, particularly those involving prosecutions under the criminal laws, now and then there will leave the lips of either the judge or district attorney some remark or remarks which should not go before the jury. Unless, however, it can justly be said that such remarks are so grossly improper as irresistibly to lead to no other conclusion than that the rights of a party to an action or the defendant in a criminal case were thereby seriously prejudiced and he, therefore, denied a fair and impartial trial according to the law of the land, then the result reached below cannot for that reason be set at naught.

The claim that the court should have advised the jury to find the defendant not guilty is answered by the discussion above.

The judgment and the order appealed from are affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 10, 1925, and the following opinion then rendered thereon:

HART, J.—The defendant, in a petition for a rehearing of this case, makes substantially the points which were urged

for a reversal in his briefs, viz.: 1. That there was no proof showing the time at which he formed the alleged intent to embezzle the radio equipment introduced in evidence; 2. That this court overlooked, or at least did not notice in its opinion, the fact that, previously to asking defendant whether he, on some prior occasion, purchased or rented from a certain music company a phonograph equipment under the name of Lewis and at that time stated that he was a member of the Olympic Club of San Francisco, asked defendant, in effect, if it was not true that he (defendant) was, in connection with the said transaction, arrested in San Francisco under the name of Lewis.

Before considering again the points above stated we may acknowledge the error made in the former opinion in stating that the witness Kimball, president of the Kimball-Upson Company, identified the radio set introduced in evidence as an exhibit as the set which defendant had taken from the store of the corporation while he was manager of the radio department thereof. Kimball did not so testify, as we learn from the re-examination of the record. We should have said that the said radio set was unqualifiedly identified as the property of said corporation by P. A. Mitchell, assistant general manager of the corporation. The error is not material, however, since it was not denied by the defendant that the radio set in question belonged to the corporation and that he had it in his possession and sold it.

1. Counsel, in their petition here, state that we misapprehended the point made in their briefs to the effect that there was no proof as to the particular time at which defendant formed the alleged intent to convert the property in question to his own use. We did not misunderstand the point. The point, as specifically explained in the petition, is: That, it having been shown that the radio equipments referred to in the information were bought by the Kimball-Upson Company in the month of January, 1924, that defendant left the employ of said company in February, 1924, and that the discovery that said property had been sold by defendant in April, 1924, the question whether defendant formed the intent to embezzle the property while he was still an employee of the company is left entirely in the dark, so to speak. In other words, the contention is that, there being no evidence to show that he had the radio set in his posses-

sion while he was still an employee of the company, it might be true, so far as the record shows to the contrary, that he got possession of the property in some mysterious way in the month of March or April and after he had severed his connection with the company as an employee; that, as the proposition is stated by counsel, "he could have entered the store of Kimball-Upson and stolen the set during the month of March previous to the sale by him. He would then have been guilty not of embezzlement but of larceny." There is no force to that argument as addressed to this court. It was for the jury to determine from all the circumstances, which are recited in the original opinion, when and how the defendant got possession of the set and the time he conceived the intent to embezzle it. Nor was there any ground for such an argument before the jury, for the accused admitted that he took the set in question to his home from the Kimball-Upson store in the month of January, 1924, while he was still manager of the corporation's radio department. He stated, however, that he returned the set to the store the latter part of January, 1924, for the purpose of having it included in the inventory of stock which was conducted in the month of January of each year; that he thereafter again took it to his home, where it remained until he sold it in the month of April, 1924; that he never told anyone connected with the corporation that he had sold it until July, 1924, when, the set having been found missing, an officer or employee of the corporation discovered that he had had possession of the property and sold it. There was no evidence introduced at the trial warranting an inference that the defendant stole the equipments in the month of March, nor did the defendant say he got possession in that month. He did state, however, as shown in the original opinion, that he retained possession of the set by permission of Deatrick, his successor as manager of the radio department of the Kimball-Upson store. In this connection, it is to be stated that, if, as he claims, after his connection with the corporation as a regular employee had terminated, he was authorized by Deatrick as the manager of the corporation's radio department to retain the set with authority to sell it for the corporation, his position in the transaction would be the same as though he embezzled the property while he was still in the corporation's

employ as the manager of its radio department, since the act of Deatrick, acting for the corporation, in thus giving him such possession for the purpose of selling it for the corporation conferred upon and constituted him an agent of the corporation for that particular purpose. Viewing, then, the transaction from either angle, the jury were legally at liberty to find, as impliedly they did find, that defendant at some time while acting as agent of the corporation as to said property formed the intent fraudulently to appropriate it to his own use, said set having come into his possession and control by virtue of his employment as such agent. (Pen. Code, sec. 509.) And, as pointed out in the opinion heretofore filed herein, if the property came into his control or care by virtue of his employment as clerk, etc., of the corporation, he remained agent, or trustee, of the latter as to said property so long as it continued in such care or control. In brief, all that is said in the original opinion upon the question of intent we still adhere to.

2. We did not overlook the question first asked defendant by the district attorney as to whether he had ever been arrested in connection with the transaction above mentioned under the name of Lewis. But the court sustained an objection to the question first asked, and the effect of that ruling should have been and probably was to impress the jury with the understanding that the question and the answer it was designed to elicit involved matters which it was not proper for them to consider in passing upon the issue of guilt or innocence. As stated in the former opinion, however, neither question should have been asked nor allowed. Neither was, obviously, a proper question for impeachment nor for any other purpose. [14] The legislature has specifically described the manner in which a witness may be impeached. (Code Civ. Proc., secs. 2049, 2051, 2052.) The methods thus pointed out for such impeachment are exclusive. The mere fact that a witness may, at some time, have been arrested for some crime, is not included in said sections as a ground upon which a witness may be impeached. But, as declared in the original opinion, the evidence of defendant's guilt appears to be so conclusive as to justify the conclusion that no miscarriage of justice has resulted from the misconduct of the district attorney in asking the questions on that line or the error of the court in sanctioning the

last of the questions so asked. Indeed, an examination of the defendant's own testimony will readily show that his defense as thus disclosed appears to be singularly weak—so much so, in fact, that its tendency seems to confirm rather than to negative the theory of guilt as maintained by the People.

We are satisfied with the views and the conclusions expressed and announced in the former opinion as to all the points therein considered.

The petition is denied.

Plummer, J., and Finch, P. J., concurred.