[Crim. No. 1680.   Third Appellate District.—June 19, 1939.]

THE PEOPLE, Respondent, v. HAROLD WILEY, Appellant.

Charles H. Epperson for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

TUTTLE, J.—Defendant was convicted of the crime of burglary in the first degree by a jury, and appeals from the judgment of conviction entered thereon, and from an order denying his motion for a new trial. Prior to said trial one Richard Odell, the accomplice of defendant, plead guilty to the same charge.

Turning to the facts which were relied upon by the prosecution, it appears that defendant was a man of thirty-four years of age, and Odell, his nephew and accomplice, was

twenty-five years old. About 7:30 P. M. on the date of the crime the two men left Odell's home in defendant's car, with defendant driving. They stopped at a couple of bars in the business district of Stockton and had some beer. They then proceeded to drive around the residential section of the city of Stockton until they came to a large residence which was well lighted, and in front of which a number of cars were parked. Odell then said to defendant, "There is a party going on here, and there might be some money inside." Defendant said nothing but pulled over to the curb near the residence. Odell then stepped out of the car and proceeded to enter the yard in which the house was situate. He was suddenly confronted by a very large dog which blocked his passageway, and he called to defendant that "there was a dog which would have to be taken care of". Defendant replied that he was not a very good hand with dogs, but he finally got out of the car and managed to lead the dog across the street. Odell then entered the yard and walked to the rear of the house. He entered the house through a window, and just as he did so, a maid opened the door of the room in which he was standing, and he immediately proceeded to leave by the same window, went out to the sidewalk, jumped into the automobile and started off. He drove around the block, came back and took defendant into the car. They drove into the main business section of Stockton, and while passing the hall of justice they were apprehended by the police.

Defendant took the witness stand and disclaimed any connection whatever with the crime. He claimed a total absence of any criminal intent. According to his version of the affair Odell had approached him early in the evening and stated that he wished to find a man who owed him (Odell) $8. Appellant testified that he agreed to take his car and drive Odell in search of the man who owed the money, and that when they reached the residence in question, Odell stated that he thought the man he was looking for was inside the house, and it was for this reason that they stopped near the residence.

It is contended by appellant that he was convicted upon the uncorroborated testimony of his accomplice (sec. 1111, Pen. Code), and that the judgment must therefore be reversed.

The rule governing the point in question is stated in *People* v. *Yeager,* 194 Cal. 452–473 [229 Pac. 40], to be as follows:

"It is sufficient if the corroborating evidence tends to connect the defendant with the commission of the offense, though if it stood alone it would be entitled to little weight. It is not necessary to corroborate the accomplice with direct evidence. If the connection of the accused with the alleged crime may be inferred from the corroborating evidence in the case, it is sufficient."

It has also been held that "the entire conduct of defendant may be looked to for corroborating circumstances of the testimony of an accomplice, and if from such circumstances, the connection of the accused with the crime may fairly be inferred, the corroboration is sufficient". (*People* v. *Nikolich,* 93 Cal. App. 356 [269 Pac. 721].) We are of the opinion that there is ample evidence in the case to bring it within the rule above stated. This corroboration consists in the following facts and circumstances: Admission of the defendant that he was with Odell; that they drove out to the residential section; that Odell made a remark about stopping at this house; that Odell said, "Pull in here," and defendant said, "O. K."; that the dog came out, and that defendant admitted that he said, "What in the hell do you want me to take the dog for?"; that defendant got out of the automobile and proceeded to divert the attention of the dog while Odell engaged in the commission of the crime; that defendant waited around until Odell came out; and that when they left the scene of the crime, he took the wheel and was driving the automobile at the time when he and Odell were arrested. We are therefore of the opinion that the contention is without merit.

It is next contended that the district attorney was guilty of prejudicial misconduct. One of the instances relied upon arose in the argument made by the district attorney to the jury. In that argument the district attorney referred to the defendant as a "dealer in a gambling joint". It is contended that this reference to the defendant was not based upon any evidence produced at the trial, and was highly prejudicial. Turning to the record, however, we find some support for the reference thus made to defendant. Odell testified, in answer to a question concerning his reason for going to the place where beer was sold: "Well, Mr.

Wiley had been working at the gambling joints up town, and he wanted to find out if there was any news of their opening." It thus appears that the district attorney would have been fully justified in making a statement that the defendant *worked* at a gambling joint, and we are at a loss to see how any additional prejudice would arise by reason of the fact that he was referred to as having been a *dealer* in a gambling joint. The difference is one of words rather than one of substance. The implications—if there be any—are not very widely separated. Several other occasions are pointed out wherein it is contended by appellant that the conduct of the district attorney was prejudicial. We have examined all of them, and we cannot say that the district attorney went beyond the bounds of propriety and fairness, or that he did anything to wilfully injure or prejudice the defendant in the eyes of the jury. As stated in *People* v. *Sprado,* 72 Cal. App. 582 [237 Pac. 1087] :

"Of course it is to be said that in all warmly contested cases, particularly those involving prosecutions under the criminal law, now and then there will leave the lips of either the judge or district attorney some remark or remarks which should not go before the jury. Unless, however, it can justly be said that such remarks are so grossly improper as irresistibly to lead to no other conclusion than that the rights of a party to an action or the defendants in a criminal case were thereby seriously prejudiced and he, therefore, denied a fair and impartial trial according to the law of the land, then the result reached below cannot for that reason be set at naught."

■ It is contended that the court erred in instructing the jury on the law relating to "flight", and the inferences which the jury might draw from the flight of the defendant from the scene of the crime. It is urged that the instruction should not have been given at all, because there was no evidence whatever of flight. We are of the opinion that the trial court was justified in so instructing the jury. While we do not regard the evidence of flight as very strong or convincing, it nevertheless appears that both the defendants left the scene of the crime very rapidly in the automobile. The fact that they drove directly into the business section of Stockton is not conclusive evidence that they did not attempt to flee from the scene of the crime.

It is finally contended that the trial court erred in refusing to grant probation to the defendant. When the latter was arraigned for judgment, his counsel made a motion for probation, and asked that the matter be referred to the probation officer. The trial court promptly stated that in his opinion the facts of the case did not justify probation, and he thereupon denied the motion. The right to thus summarily deny probation is expressly granted by the provisions of section 1203 of the Penal Code. It is also a well-settled rule that the matter of the exercising of the power of probation is committed to the sound discretion of the trial court, and that an order denying probation will not be reviewed on appeal unless it be shown that there was an abuse of that discretion. The rule governing the entire matter is well summarized in the following excerpt from the case of *People* v. *Blankenship,* 16 Cal. App. (2d) 606–609 [61 Pac. (2d) 352]:

"It must, in the first place, be conceded that the granting or withholding of probation is a matter that rests entirely in the sound discretion of the court. (Sec. 1203, Pen. Code; *People* v. *Judson,* 128 Cal. App. 768, 774 [18 Pac. (2d) 379].) In the second place, probation is not a right which is given to a defendant in a criminal proceeding who has either pleaded guilty to the commission of an offense or has been duly convicted thereof. 'It is an act of grace and clemency granted to a deserving defendant whereby he may escape the extreme rigors of the penalty imposed by law for the offense of which he stood convicted.' (*People* v. *Hainline,* 219 Cal. 532, 534 [28 Pac. (2d) 16]; *People* v. *Payne,* 106 Cal. App. 609, 613 [289 Pac. 909].) The only right which an applicant for probation possesses is that his petition shall receive consideration by the court. He may not demand clemency as a matter of right. (*People* v. *Roach,* 139 Cal. App. 384, 387 [33 Pac. (2d) 895].)"

We are free to confess that had the matter been before us, we would have been impelled to grant the motion. The defendant was not armed on the occasion mentioned. He had, so far as this record shows, no prior convictions, and he and his family had resided in Stockton for several years. We feel, however, that the trial court did its duty as it saw it, and we are not at liberty to substitute our own judgment for that of the trial judge. The latter had an opportunity to observe the defendant, and to draw his own

conclusions from the testimony and demeanor of the defendant when the latter was before him, and from other facts not here disclosed. We cannot say, under such circumstances, that the trial court abused its discretion in denying the motion, and we are therefore powerless to interfere with the disposition of the matter as thus made.

The judgment and order appealed from are, and each of them is, affirmed.

Thompson, J., and Pullen, P. J., concurred.