[Crim. No. 689.   Department Two. — March 12, 1901.]

THE PEOPLE, Respondent, v. LEM DEO, Appellant.

CRIMINAL LAW — MOTION TO SET ASIDE INDICTMENT — PRESENCE OF INTERPRETER BEFORE GRAND JURY. — A motion cannot prevail to set aside an indictment for a felony, upon the ground that an interpreter, whose presence before the grand jury was necessary to interpret the evidence of witnesses who could not speak the English language, was not a person permitted to be present before the grand jury while the charge against the defendant was under consideration.

ID. — "INTERPRETER" A "WITNESS" — CONSTRUCTION OF CODE. — An "interpreter" is a "witness," within the meaning of section 925 of the Penal Code.   He must be sworn, and states under oath what the witnesses say, who speak in a foreign language; and the general rules which govern the testimony of witnesses apply to him.

ID. — MURDER — EVIDENCE — DYING DECLARATIONS OF DECEASED. — Declarations of the deceased, proved to have been made under a sense of impending death, are admissible in evidence against the defendant charged with his murder.

ID. — TESTIMONY OF EYE-WITNESSES — INAPPLICABLE INSTRUCTION — CIRCUMSTANTIAL EVIDENCE. — Where it appears that the main proof of the prosecution was the direct testimony of eye-witnesses, who testified that they saw the defendant shoot the deceased, an inapplicable instruction, requested by the defendant, assuming that the

main case of the prosecution rested upon circumstantial evidence, was properly refused.

ID. — REQUEST SUBSTANTIALLY GIVEN. — Where a requested instruction was substantially given in other parts of the charge, it is not error to refuse it.

ID. — FLIGHT OF DEFENDANT — INSTRUCTION — KNOWLEDGE OF DEFENDANT AS TO CHARGE OF KILLING — DEFENDANT NOT PREJUDICED. — The court may properly instruct the jury upon the subject of the flight of the defendant. An instruction on that subject, which begins by speaking of the flight of a person immediately after "the crime has been committed, with which he knows he was charged," is to be deemed wholly based upon that condition as to the knowledge of the defendant; and where, in view of the whole instruction, it appears that the defendant was not prejudiced thereby, it cannot constitute ground of reversal.

APPEAL from a judgment of the Superior Court of Yuba County and from an order denying a new trial. E. A. Davis, Judge.

The facts are stated in the opinion of the court.

W. H. Carlin, and W. S. Johnson, for Appellant.

Tirey L. Ford, Attorney-General, C. N. Post, Assistant Attorney-General, and E. A. Forbes, for Respondent.

McFARLAND, J.—The appellant was convicted of murder in the first degree, and sentenced to life imprisonment; and he appeals from the judgment and from an order denying a motion for a new trial.

1. The main point made by appellant for a reversal is, that the court erred in denying his motion to set aside the indictment, made under section 995 of the Penal Code, upon the ground that a person not mentioned in section 925 of said code was permitted to be present during the session of the grand jury when the charge against appellant was under consideration. The person alluded to was one Wong Ock, and the facts touching the matter are these: When the grand jury was about to take up the charge against appellant, it was discovered that two of the main witnesses to be examined were Chinese, and could not speak or understand the English language; whereupon the said Wong Ock, also a Chinese, but who understood and could speak both Chinese and English, was subpœnaed and sworn as an interpreter. During the examination of said two witnesses, which occupied about one

half-hour, Wong Ock was present and acted as such interpreter; and as soon as said examination was concluded, he left, and was not again present, and was not present during any of the deliberations of the grand jury concerning said charge.

The court did not err in denying the motion on the ground above stated. Waiving the absurdity of the proposition that the legislature intended that a grand jury should be precluded from inquiring into a public offense where the investigation made necessary the hearing of the testimony of witnesses who spoke only a foreign language, it is evident that the word "witnesses," used in section 925, includes interpreters. The provisions of the codes make the proposition sufficiently clear. The law of evidence is the same in criminal as in civil cases, except as otherwise provided in the Penal Code. (Pen. Code, sec. 1102.) A witness is described in the Code of Civil Procedure (sec. 1878) as follows: "A witness is a person whose declaration under oath is received as evidence *for any purpose*, whether such declaration be made on oral examination, or by deposition or affidavit"; and section 2005 provides that an oral examination is one where the testimony is heard "by the jury or tribunal from the lips of the witness." An interpreter "must be sworn." (Code Civ. Proc., sec. 1884.) He states, under oath, to the jury what the other witness said; and this is testimony,—as clearly such as the statement of any ordinary witness who testifies to the declaration or admissions of another person. In volume 17 of the American and English Encyclopædia of Law, 2d ed., p. 30, it is said: "An interpreter, whether in the trial of a case in court, or as interpreter of a witness giving his deposition, must give his testimony under oath. In either case *he is a witness*, and there is every reason for saying that the general rules which govern the testimony of other witnesses apply to him" (citing cases), and that "an interpreter is a witness, distinguished from the person whose testimony he interprets"; and again, on page 31: "The testimony of an interpreter, like the testimony of any other witness, may be impeached; his testimony goes to the jury under those rules of law by which the testimony of all witnesses is weighed." The authorities cited support these quotations from the text. Can there be any doubt that perjury could be assigned, where an interpreter had knowingly and feloniously sworn falsely as to what the other witness had said? Therefore, what essential of the definition of a witness does an

interpreter lack?    That he is a witness, and that what he says under oath is testimony, is strikingly illustrated by the case of *Schearer* v. *Harber*, 36 Ind. 536.    In that case it was sought to show that the plaintiff had made contradictory statements at a former trial.    This was sought to be done by a witness named Smith, who was present at the first trial.    But it appeared that the plaintiff was a German, who did not understand English, and had been examined through an interpreter; and it thus appeared that Smith was swearing as to what the interpreter said.    It was held that this could not be done,—at least, without accounting for the absence of the interpreter. The court, having said that an interpreter appointed by the court "is not thus made the agent of the party whose testimony is to be interpreted," proceeds as follows: "The interpreter, on the trial of the cause before the justice, we may assume was duly sworn, because the law required that he should be sworn.    He translated what the appellant testified to in the German language into English, and in the latter language delivered it to the justice and the jury.    To this extent the interpreter was a witness, and the case falls clearly within the rule that regulates the introduction of evidence of what a witness testified to on a former trial.    The rule is, that such evidence is inadmissible unless the witness be dead, out of the jurisdiction, or is insane or sick, and unable to testify, or has been summoned, but appears to have been kept away by the adverse party.    (1 Greenleaf on Evidence, sec. 163.)    There was no reason whatever shown why the interpreter could not be produced, and therefore there was no foundation laid for the introduction of evidence of what he swore to on the former trial,—in other words, of the interpretation he gave of the plaintiff's evidence on that trial.    The evidence, therefore, was incompetent, and should have been stricken out on the motion of the appellant, which seems to have been made as soon as it was ascertained that the witness Smith was testifying to what the interpreter said, instead of what the appellant said."    The same ruling was made by this court in *People* v. *Lee Fat*, 54 Cal. 527, where the opinion in the case of *Schearer* v. *Harber*, *supra*, is quoted from, and also in *People* v. *Ah Yute*, 56 Cal. 119.    Under the above views it is not necessary to inquire whether the re-enactment of section 925 in 1897 repeals, by implication, the statute of March 23, 1872 (Stats. 1871-72,

p. 540), which expressly authorizes the district attorney to have an interpreter before the grand jury.

2. The court did not err in admitting the dying declaration of the deceased, Hoey Goon. He was wounded through the vital parts of the body; he grew continuously weaker from the time of the wounds until he died about five or six hours afterwards; the physicians in attendance told him, or tried to tell him, through two interpreters, Loy and Mix, that he was going to die; Loy told him, "The doctors cannot do nothing for you; you have n't got no pulse." Mix, in answer to the question, "Well, did the doctors tell you to tell him he was going to die?" said, "The doctor told me the way he was wounded it is fatal." Loy testified: "He told me he was going to die. He said the shot in his leg did not hurt him much, but that he was going to die right there from the shot through his body," and said that "he expected to die," and that he "was not going to live." Mix testified that deceased said to him, "The way I am wounded, there is no hope for me." There was other evidence, and although the witnesses now and then used a word not quite so strong to the point of immediate dissolution as those above quoted, yet, taking all the evidence together, and considering all the attending circumstances, it was sufficiently shown that the deceased made the dying declaration under a sense of impending death.

3. The third instruction asked by appellant was properly refused. It assumes that the main case of the prosecution rested upon circumstantial evidence, which was not the fact. The main proof of the prosecution was the direct testimony of eye-witnesses, who testified that they saw the appellant shoot the deceased. Moreover, the substance of the instruction was given in other parts of the charge, and particularly in appellant's fifth instruction.

4. Appellant complains of the instructions of the court upon the subject of "flight." Appellant's counsel deals with one sentence of the charge by itself, and contends that it leaves out the proposition of the knowledge of the defendant, "either of the fact of the killing of the deceased, or that he (the defendant) was accused of the same." But the whole of the instruction must be considered, and the sentence immediately preceding the one objected to speaks of the flight of a person immediately after "the crime has been committed, with which he knows he is charged," and the whole instruction is

clearly based on this condition. Perhaps it would have been better in the beginning to have held that no instruction about flight should be given at all, and that the significance that should be attached to the fact of flight should be left entirely to the jury upon the arguments of counsel; but it is too late to hold that instructions on that subject are erroneous, for such instructions have been frequently approved. Moreover, the instruction as given in the case at bar was not prejudicial to appellant.

The four points above noticed are the only ones made by appellant.

The judgment and order appealed from are affirmed.

Henshaw, J., and Temple, J., concurred.