[Crim. No. 432. First Appellate District.—November 3, 1913.]

THE PEOPLE, Respondent, v. ONG GIT, Appellant.

Criminal Law—New Trial on the Ground of Newly Discovered Evidence.—Newly discovered evidence whose only tendency is to contradict and impeach the testimony of a witness for the prosecution neither warrants nor requires the granting of a new trial.

Id.—Criminal Trial—Grounds for Exclusion of Person From Courtroom.—The fact that a person has been guilty of misconduct at the preliminary examination of one accused of murder, in coaching and signaling witnesses for the prosecution, is not a valid ground for his exclusion from the courtroom at the trial of the accused in the superior court; if counsel for the defendant claims that such person has coached witnesses for the prosecution, and that his presence at the trial will intimidate witnesses for the defense, then counsel should develop these facts by cross-examination or independent proof, and not rely on mere assertions, otherwise the court does not abuse its discretion in refusing to exclude such person from the trial.

Id.—Exclusion of Witness—Reasons for Rule.—The purpose of the rule permitting the exclusion of witnesses from the courtroom upon the request of either party is to prevent them from hearing

the testimony of a witness under examination. Strictly construed, the rule applies only to a witness of the party adverse to the party making the request; liberally construed, it applies to a witness who, in good faith, has been subpoenaed to testify for either party to the action.

Id.—Exclusion of Witness—Discretion of Court.—The exclusion of a witness is not a matter of absolute right in every case. A request therefor is addressed to the discretion of the trial judge, the exercise of which must be controlled largely by the circumstances of the individual case; and the court does not abuse its discretion in refusing to exclude a person who appears to have been subpoenaed by the defense to lay a foundation for his exclusion.

Id.—Interpreter—Competency—How Questioned and Determined.— Where the competency of a Chinese interpreter and the accuracy of his interpretation of testimony at the preliminary examination are questioned at the trial of the accused, testimony, by cross-examination or otherwise, may be elicited to show his lack of ability or accuracy in translation, but the court may properly refuse the request of the accused that the interpreter hold a conversation in the Chinese language with Chinese witnesses in the presence of the jury to determine his qualifications.

Id.—Witness—Impeachment by Transcript of Evidence at Inquest— Interpreter.—The court may properly refuse to permit the accused to show, by a transcript of the testimony taken at the coroner's inquest, that two of the witnesses for the prosecution there made statements irreconcilable with their testimony at the trial, when the testimony at the inquest was given through an interpreter, and he is not produced to prove the correctness of the transcript.

Id.—Homicide—Degree of Offense—Instructions.—Where the only defense interposed in a homicide case is that the defendant is not the person who fired the fatal shots, and the evidence is such as to compel the jury either to find the defendant guilty of an offense greater than manslaughter or acquit him, the court is not required to instruct on the subject of manslaughter.

Id.—Instructions—Refusal Because Covered by Charge of Court.— The refusal of instructions requested by the defendant is proper where they are covered by the charge of the court.

Id.—Homicide—Proof of Corpus Delicti.—The evidence shows that the deceased in this case was killed by a gunshot wound inflicted by the defendant; an autopsy upon the body was not necessary to the establishment of the corpus delicti.

Id.—Remarks of Counsel—Admonition to Jury.—Where the trial court admonishes the jury to pay no heed to remarks of the district attorney, it will be presumed on appeal that the admonition was observed.

Id.—Misconduct of Counsel—Time for Admonition.—Ordinarily it is better practice to correct an abuse occurring in argument to the jury at the moment of its occurrence, but it was not prejudicial error in this prosecution for homicide for the court to refuse to entertain further exceptions while the argument of the district attorney was in progress, and direct counsel for the defendant to note and assign as misconduct any remark which they deemed objectionable and prejudicial at the close of the argument; counsel complying with the ruling, and the court then admonishing the jury at the close of the argument that "the arguments of counsel are of value to you in your deliberations only in so far as they are based upon the testimony that has been given to you by the witnesses upon the stand. Any outside matters that may have been brought into the case by counsel or any of them have no bearing, and should have no weight with you."

Id.—Homicide—Evidence as to Identity of Accused.—Photographs.—Where the defense in cross-examination of a witness for the people in a homicide case endeavors to show that shortly after the commission of the crime the witness was uncertain in his identification of the accused, he may testify on redirect examination that a short time after the offense was committed he was shown a photograph of a group of Chinamen and therein recognized and identified the accused.

APPEAL from a judgment of the Superior Court of Monterey County and from an order refusing a new trial. B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

Carroll Cook, and Wm. Hoff Cook, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

LENNON, P. J.—The defendant, Ong Git, and three other Chinamen were jointly charged with the murder of one Lee Lung Kai. Upon a separate trial of the defendant Ong Git he was found guilty of murder in the first degree, and his punishment was fixed at life imprisonment. This appeal is from the judgment and an order denying a new trial.

The motion for a new trial was grounded, among other things, upon alleged newly discovered evidence which, as shown by affidavits and the testimony of witnesses offered and received in support of the motion, tended to contradict and

impeach the evidence of one McKeever, a witness for the people; who testified upon the trial that he had heard the shots which it was claimed resulted in the death of the deceased, and that shortly thereafter he had seen the defendant with a pistol in his hand running away from the scene of the homicide.  In short, the newly discovered evidence consisted, as stated in the opening brief of counsel for the defendant, "in part of contradictions of statements by McKeever as to what he had done, and in part of direct and affirmative evidence that the witness McKeever was in another place in Salinas at the time when, according to his testimony, he was in Chinatown and saw the defendant."

Aside from the question as to whether or not the affidavits filed in support of the motion show that the evidence relied upon for a new trial could not with due diligence have been discovered and produced in the first instance, we are satisfied that the showing as made was insufficient to warrant the granting of a new trial upon the ground of newly discovered evidence.  Admittedly the only tendency of the newly discovered evidence was to contradict and impeach the testimony of the witness McKeever; and it is well settled that such evidence neither warrants nor requires the granting of a new trial. (*People* v. *Anthony,* 56 Cal. 397; *People* v. *McCurdy,* 68 Cal. 576, [10 Pac. 207] ; *People* v. *Goldenson,* 76 Cal. 328, [19 Pac. 161] ; *People* v. *Loui Tung,* 90 Cal. 377, [27 Pac. 295] ; *People* v. *Freeman,* 92 Cal. 359, [28 Pac. 261] ; *People* v. *Holmes,* 126 Cal. 462, [58 Pac. 917].)

We are unable to perceive how defendant was prejudiced by the refusal of the lower court to grant the request of counsel for the defendant that a Chinaman named Wong Duck be excluded from the courtroom.  The district attorney in effect declared that the assistance of this particular Chinaman was needed for the proper presentation of the prosecution's case. On the other hand it appears that the defense desired his exclusion from the courtroom not upon the ground that he was to be a witness in the case, but because, as it was claimed, he had coached some of the witnesses for the prosecution, and was caught openly signaling to them during the preliminary examination in the justice's court.  It was further claimed by counsel for the defendant that the mere presence of this Chinaman in the courtroom would operate to intimidate certain Chinese witnesses who would be called to identify the

defendant as one of the persons who participated in the homicide, and tend to coerce them into giving false testimony. These contentions were supported in the lower court only by the vehement assertions of counsel for the defendant, and were as vehemently disputed by the district attorney. Conceding, however, that the Chinaman in question had been guilty of the misconduct ascribed to him at the preliminary examination of the defendant, this in itself would not have constituted a valid ground for his exclusion from the trial of the defendant in the superior court. That was a matter which should have been called to the attention of and remedied by the justice of the peace who presided at the preliminary examination. If it were true, as counsel for the defendant claimed, that certain of the witnesses for the prosecution had been coached by the Chinaman in question to give false testimony, that was a fact which might have been developed to the advantage of the defendant upon cross-examination of the suspected witnesses, or by independent proof with such cross-examination as a foundation therefor, but such fact, even if it were established, would not in and of itself be sufficient to compel the making of the order of exclusion. If counsel for the defendant really believed that the presence in the courtroom of the Chinaman in question would result in the intimidation of certain witnesses then a showing to that effect should have been made by more effective means than mere assertion. Doubtless if a proper and sufficient showing of the likelihood of such intimidation had been made the trial court, in the exercise of its discretion, would have made and enforced an order which would have covered the situation.

But apart from all of this the purpose of the rule permitting the exclusion of witnesses from the courtroom upon the request of either party to an action, civil or criminal, is to prevent such persons from hearing the testimony of a witness under examination. Strictly construed the rule has application only to a witness of the party adverse to the party making the request (Code Civ. Proc., sec. 2043). Liberally construed it doubtless can and should be applied to a hostile witness who, in good faith, has been subpoenaed to testify for either party to the action. The exclusion of a witness, however, is not a matter of absolute right in every case. A request for such exclusion is addressed to the discretion of the trial judge,

the exercise of which must be controlled largely by the circumstances of the individual case. (*People* v. *Garnett*, 29 Cal. 622; *People* v. *Sam Lung*, 70 Cal. 515, [11 Pac. 673].) In the present case the Chinaman in question was neither subpoenaed nor called as a witness for the people; and all of the circumstances surrounding the request for his exclusion justify the inference that such exclusion was not desired upon the ground that he was to be a witness in the case on either side, but rather because he might be of some assistance to the prosecution in the presentation of its case.

In other words, we are satisfied that the trial court was justified in assuming, as evidently it did, from the statements and tacit admissions of counsel for the defense, that although the Chinaman in question was subpoenaed ostensibly as a witness for the defense, he was in fact placed under the process of the court merely for the purpose of laying the foundation for the request that he be excluded from the courtroom. Obviously, therefore, the mere fact that he had been formally subpoenaed as a witness for the defense was not conclusive nor even a matter of any moment in the consideration and determination of the request.

The record before us does not support counsel for the defendant in the claim that they were denied the right to cross-examine Lee Hing, a witness for the people, as to his intimacy and conversations with Wong Duck, the Chinaman whose exclusion from the courtroom was requested. To the contrary the record shows that counsel for the defense, despite repeated objections and adverse rulings relating to the form and repetition of various questions, persisted in the cross-examination of this witness, and eventually succeeded in securing negative answers to every material and relevant question that was asked him.

Robert L. Jones, a Chinese interpreter, was called and sworn as a witness for the defense, and testified that he had correctly translated the testimony given by the several witnesses at the preliminary examination from the Chinese into the English language. The purpose of this testimony was not definitely disclosed in the lower court; but apparently it was intended as a foundation for the subsequent introduction in evidence by way of impeachment of contradictory statements appearing in the transcript of the testimony taken at the

preliminary examination.  However that may be, upon cross-examination of Jones, the interpreter, counsel for the people endeavored to show that the witness did not understand the different dialects of the several Chinese witnesses who had testified at the preliminary examination; and with the purpose of offsetting any unfavorable inference which may have resulted from such cross-examination, counsel for the defendant requested that two of the Chinese witnesses who had been previously sworn in the case be permitted, in the presence of the jury, to converse in Chinese with the witness under examination, and thereby enable the latter to demonstrate his qualifications as an interpreter of the Chinese language.  The trial court promptly and properly denied the request.

It may be conceded that the accuracy of an interpreter's translation of testimony is a question of fact which must ultimately be determined by the jury.  (*Skaggs* v. *State,* 108 Ind. 53, [8 N. E. 695]; *Schnier* v. *People,* 23 Ill. 11; *United States* v. *Gibert,* 25 Fed. Cas. No. 15204; *Thon* v. *Rochester R. R. Co.,* 83 Hun, 443, [30 N. Y. Supp. 621]; Wharton on Criminal Evidence, sec. 4497.)  It follows that if the competency of the witness to interpret the Chinese language was assailed, or doubt thrown upon the accuracy of his translation, by cross-examination or otherwise, the defendant undoubtedly had the right to show, if he could, either upon redirect examination or by competent independent evidence, that the interpreter was not only lacking in ability to translate from the Chinese into the English language, but that his translation of the testimony given at the preliminary examination was not correct.  This must be so, because the interpreter was nothing more nor less than a witness to the claimed contradictory statements sought to be introduced in evidence by way of impeachment (*People* v. *Lem Deo,* 132 Cal. 199, (64 Pac. 265]), and obviously the truth of his testimony might have been impaired or wholly impeached by the methods usually employed and sanctioned to discredit the testimony of an ordinary witness.  Manifestly the situation could not be met by the obvious absurdity which would be certain to result from the jabbering jargon of an unbridled oriental tongue endeavoring to demonstrate to an American jury a Caucasian's knowledge of the Chinese language.

The defendant offered in evidence a transcript of the testimony taken at the coroner's inquest, for the purpose of impeaching two of the witnesses for the prosecution. It was claimed that such transcript would show that the assailed witnesses had made previous statements which were contradictory of and wholly irreconcilable with their testimony on the trial—which was to the effect that they were present at the homicide, and identified the defendant as one of four Chinamen who participated in the perpetration of the crime. It appears that the testimony taken at the coroner's inquest was given through the medium of an interpreter; and for that reason the prosecution objected to the transcript as containing incompetent evidence, unless it first were shown by the testimony of the interpreter who officiated at the inquest that the statements attributed to the witnesses referred to were correct. Counsel for the defendant were either unwilling or unable to produce the interpreter as a witness; at any rate the interpreter immediately in question was not produced as a witness, and accordingly the objection was sustained upon the ground stated.

We see no error in the ruling. In order to lay the foundation for the impeachment of the assailed witnesses it was first necessary to prove that they had made the contradictory statements attributed to them; and this could be done only by "the interpreter or some other witness who had heard and understood the language in which the statements . . . were made." (*People* v. *Ah Yute,* 56 Cal. 119.) Without such proof the reception in evidence of the statements attributed to the witness and alleged to have been made at the coroner's inquest would have been a transgression of the rule of evidence which excludes hearsay testimony. (*People* v. *Lee Fat,* 54 Cal. 527; *People* v. *Ah Yute,* 56 Cal. 119; *People* v. *Jan John,* 137 Cal. 220, [69 Pac. 1063]; *People* v. *Lewandowski,* 143 Cal. 574, [77 Pac. 467]; *People* v. *Jan John,* 144 Cal. 285, [77 Pac. 950].)

The defendant's requested instructions dealing with the definition of manslaughter, and in effect calling for a conviction of such offense if the killing was shown to have been "committed without malice and in a sudden quarrel or heat of passion," were rightfully refused by the trial court because they had no possible application to the facts of

the case as developed upon the trial. The evidence adduced upon behalf of the people not only tended to, but did show the commission of a willful, deliberate, and malicious murder. On the other hand, the defense interposed by the defendant rested entirely upon the theory that the defendant was not the person who fired the fatal shots; and in support of this theory counsel for the defendant endeavored to show, by cross-examination and otherwise, merely that certain witnesses for the people were either mistaken or willfully false in their identification of the defendant as one of the perpetrators of the crime. It was not claimed by the defendant in the court below, nor is it pretended here, that the circumstances attending the killing as revealed by the evidence upon the whole case contained the slightest suggestion of a sudden quarrel or embodied any of the essentials of manslaughter.

We are satisfied from a careful perusal of the record before us that the evidence on the whole case compelled the jury either to find the defendant guilty of an offense of greater magnitude than manslaughter, or else acquit him. This being so, the trial court was not required to charge the jury upon the subject of manslaughter. (*People* v. *Madden,* 76 Cal. 521, [18 Pac. 402] ; *People* v. *Barry,* 90 Cal. 41, [27 Pac. 62] ; *People* v. *Scott,* 93 Cal. 516, [29 Pac. 123] ; *People* v. *McNutt,* 93 Cal. 658, [29 Pac. 243] ; *People* v. *Lopez,* 135 Cal. 23, [66 Pac. 965] ; *People* v. *Swist,* 136 Cal. 520, [69 Pac. 223] ; *People* v. *Keith,* 141 Cal. 686 [75 Pac. 304] ; *Courteney* v. *Standard Box Co.,* 16 Cal. App. 600, [117 Pac. 778].)

Complaint is made of the trial court's refusal to give certain other instructions requested by the defendant; but we find upon an inspection of the record that in each instance the subject matter of the requested instruction, in so far as it correctly stated the law, was sufficiently and clearly covered in the charge of the court, which in its entirety and without conflict stated to the jury the law applicable to the facts of the case.

There is no merit in the contention that the *corpus delicti* was not established at the trial in the court below. We have neither the time nor the inclination to discuss the hypercritical analysis made of the evidence upon this phase of the case by counsel for the defendant. It will suffice to say that the record reveals competent, complete, and uncontroverted evidence

that the victim of the crime was dead, and that he died as the immediate result of a gunshot wound inflicted by the defendant. An autopsy upon the body of the deceased was not necessary to the establishment of the *corpus delicti.* (*People* v. *Wood,* 145 Cal. 659, [79 Pac. 367].)

Counsel for defendant took exception to several remarks made during the argument to the jury by special counsel who was employed to assist the district attorney, and assigns such remarks as prejudicial misconduct. We fail to see how in any specified instance the rights of the defendant were impaired by the remarks complained of. In any event the trial court in each instance admonished the jury to pay no heed to such remarks; and presumably the admonition was observed.

Finally, during the course of the argument the trial court of its own motion ruled that no further exceptions would be entertained while the argument was in progress, and directed counsel for the defendant to note and assign as misconduct any remark which they deemed objectionable and prejudicial at the close of the argument.

Ordinarily it is better practice, no doubt, to correct an abuse occurring in argument to the jury at the moment the incident occurs. In the present case, however, the procedure followed apparently became necessary because of frequent and, in many cases, unwarranted interruptions of the argument; and such ruling, while expediting the progress of the trial, neither hampered nor harmed the defendant. Counsel for the defendant complied with the ruling of the court, and at the close of the argument specified several instances in which it was claimed that the prosecuting officers had misstated the evidence; but the trial court in its charge to the jury covered the situation, we think, by admonishing the jury that "The arguments of counsel are of value to you in your deliberations only in so far as they are based upon the testimony that has been given to you by the witnesses upon the stand. . . . Any outside matters that may have been brought into the case by . . . counsel or any of them . . . have no bearing, and should have no weight with you."

Certain exhibits, consisting of two photographs of a group of Chinamen, which included the defendant, were properly admitted in evidence for the purpose stated by the district

attorney. The occasion for the offer and admission in evidence of these exhibits arose after counsel for the defendant had endeavored to show upon cross-examination that shortly after the commission of the homicide Lee Hing, a witness for the people, was uncertain in his identification of the defendant as one of the guilty parties. Upon redirect examination the witness testified that shortly after the commission of the homicide he was shown the exhibits in question by the district attorney, and thereupon recognized and identified the defendant as one of the persons who had participated in the killing of the deceased. The purpose of this testimony and of the exhibits accompanying it was, as in effect stated by the district attorney, to rebut any unfavorable inference which might have resulted from the cross-examination, by showing that the witness, with the aid of such exhibits, could and did with certainty implicate and identify the defendant shortly after the commission of the crime. With that purpose in view and for that purpose alone the exhibits in question were properly admitted in evidence. (*People* v. *Ferrara,* 18 Cal. App. 271, [122 Pac. 1089].)

There was no prejudicial error in permitting the witness Shannon to testify to all that was said by the several parties present upon the occasion when the defendant, Ong Git, and his codefendants were arrested. True Shannon could not testify positively that the defendant in the case at bar was present on the occasion referred to; but this fact was subsequently established by competent evidence.

Having discussed and disposed of all the points presented upon this appeal which are worthy of mention, and it appearing that the defendant was fairly tried and justly convicted, the judgment and order appealed from are affirmed.

It is but fair to add that at the trial the defendant was represented by counsel other than those appearing for him upon the appeal.

Kerrigan, J., and Richards, J., concurred.