[Crim. No. 3505.   Second Dist., Div. One.   Jan. 8, 1942.]

THE  PEOPLE,  Respondent,  v.  GEORGE  HILLIARD
SCHULTZ, Appellant.

Gladys Towles Root for Appellant.

Earl Warren, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

WHITE, J.—This is an appeal by defendant following his conviction on a charge of violating section 288 of the Penal Code. The appeal is from both the judgment of conviction and the order denying his motion for a new trial.

In view of the fact that appellant first assails the judgment on the ground that the same is not supported by the evidence, it will be necessary to summarize the factual background surrounding this litigation. From the record it appears that on Sunday, February 2, 1941, a ten-year-old girl went to one of the beaches in Los Angeles County to gather and sell moonstones. She was accompanied by her brother, twelve years of age, and a sister, nine years. Riptides had torn up the beach considerably, and more or less of a crowd had gathered there. The victim of the alleged assault had removed her shoes and stockings before she started to gather moonstones, and upon returning to get them she found that the water had washed them away. After spending about an hour searching for and gathering moonstones, she met the appellant, a man forty years of age, whom she had never known prior to this occasion. The prosecutrix testified that she asked the defendant and some other people there if they would like to buy moonstones, and they all responded in the negative. She then went to a place on the beach to obtain a box in which to carry her moonstones, where defendant again met her, washed the moonstones and put them in a box, and then accompanied the child on to the beach, where they sat down. Defendant thereupon told the child he would purchase ten cents worth of moonstones. Defendant had with him a camera, and suggested to the child that he should take some pictures of her. Before taking these pictures the defendant posed the child with her legs spread apart and tucked back her dress, exposing her private parts. After photographing the child, appellant gave her twenty cents, with which she purchased some food for

herself and her brother. While she was walking down the sidewalk with her brother, defendant came up to them, saying, "Come on, we will go over and look for your sister on the way to the show." They did not find the child's sister, but they went to a theater, where defendant purchased four tickets, two of which he gave to the victim's brother, whereupon the prosecutrix said, "I want to go with my brother and find my sister," but the defendant said, "No, we will go on in the show, and when they come in we can get them." Upon the departure of the victim's brother, she and defendant went into the moving picture theater.

We pause here to set forth the testimony of the witnesses Edward A. Pippen and Officer Hopkins. The former lived in Redondo Beach, where he conducted a furniture store. He was acquainted with the prosecutrix. On the Sunday afternoon in question he saw her on the beach and saw defendant taking her picture. Noticing the manner in which the defendant posed the child and the fact that upon the approach of anyone defendant would put the limbs of the child together again, Mr. Pippen watched the defendant, during which time he observed that the defendant had the child lie down and was petting and caressing her, feeling of her legs and patting her on the buttocks. Shortly thereafter defendant walked over to his automobile, folded the camera and put it in the pocket of his car, took his coat, locked the car, walked down the street a little way, and commenced looking around. The witness Pippen walked over to Hermosa Avenue, where he met the police officer. The two of them went back to defendant's car and remained there until around six o'clock, when defendant approached the automobile and the officer placed him under arrest. The police officer asked the defendant for the camera, which was given to him, and the films therein were subsequently developed and the pictures introduced as evidence in court. In answer to an inquiry by the police officer as to where defendant had left the child, defendant replied that she with her brother and sister was in the Fox Redondo Theater. Officer Hopkins then took the defendant to the theater, where the defendant, upon the suggestion of the officer, went into the theater and brought the child out into the lobby, from which place she was taken by the officer to the police station and was there interviewed. At the time of his arrest the defendant admitted that he had taken the pictures of the

girl, had given her ten cents, and later took her to the theater. On being questioned as to his conduct in the show, defendant stated that he did not care to make any statement until he had talked with his attorney.

As to what took place in the theater, the victim testified that defendant sat next to her, and that shortly after they had entered the theater her brother and sister came in and seated themselves on her left. The child testified that while she was sitting next to defendant he put his leather jacket over her and his lap; that five or six minutes after her brother came into the theater, defendant started feeling around her and touched her private parts; that she tried to get away, but defendant had his hand on top of her hand and would not let go of her; that he took her hand and touched his private parts with it; that she tried to jerk her hand away, but could not. She further testified that she finally jerked her hand free and asked her brother if she could sit by him, but the seat next to him was occupied by another boy who refused to move. The victim further testified that defendant kept on trying to get his hand under her dress and that she kept tucking her dress over her and moving as far as she could to the side; that after the boy that had been sitting next to her brother had left she went and sat next to her brother. She further testified that during an intermission in the theater she went to the lavatory to wash her hands and met the defendant in the lobby; that she went back and sat down, and after a while defendant came in with police officer Hopkins. The victim's brother testified that while they were in the picture show she asked him if she could change seats with him. On the evening of February 2 at about nine o'clock, the victim of the alleged assault was examined by a physician, who testified at the trial that he found a small semi-lunar, that is, moon-shaped, laceration or break in the skin, which appeared to him to be a scratch possibly caused by a fingernail, on the outer border of the vagina, and that the laceration was less than six hours old. The physician also testified that the child's undergarment was torn quite badly.

At the police station following his arrest, as well as at the trial, defendant denied the charges made against him by the child in her narration of what took place at the picture show. Defendant admitted taking the pictures, which by the way might be said to furnish graphic and convincing evidence of

the lewd and lascivious state of defendant's mind. When asked the question, ''How did you come to take that kind of picture, or those pictures?'' which as heretofore stated showed the child with her lower limbs and private parts exposed, defendant replied, ''Well, I thought it would be odd to take a picture of a child like that exposed that way.''

Appellant's contention that the little girl's testimony was manifestly false and inherently improbable grows out of a number of apparent inconsistencies developed by the cross-examination of the witness. While the alleged variances or inconsistencies between the child's testimony given at the trial and that given at the preliminary examination, and the contradictions referred to, afforded opportunity for an argument to the jury against the reliability of her testimony, we find nothing in them from which a reviewing court could justly conclude that her entire testimony is *per se* unbelievable and that it was therefore the jury's duty not only to disregard it but to accept the defendant's denial of any wrongdoing on his part. When we consider the testimony of the young girl, coupled with the manifest licentious and lewd conduct of the defendant in taking the pictures introduced in evidence, it necessarily follows that the jurors were authorized, if they conscientiously felt warranted in so doing, to reject any testimony which might have been contradictory to that of the child witness, and therefore to disbelieve the testimony of the defendant and accept that of the child as to the immediate circumstances of the alleged felonious assault and the actions constituting the same as they took place in the theater, however weak in places the child's testimony might have been made to appear. Even though we concede discrepancies between the child's testimony at the trial and that previously given at the preliminary examination, such discrepancies cannot justly be said to stamp the story of the witness as to the immediate circumstances of the alleged assault and the conduct of the defendant in the commission thereof as improbable or inherently unbelievable. The matters referred to were, as stated above, for the jury to consider, as was the ultimate question submitted for its decision, *viz.*, whether or not the defendant committed the felonious assault charged against him. If, therefore, the jurors, as manifestly they did, believed the testimony of the child in the main, or if they believed only that portion of the testimony bearing on the immediate circumstances of the alleged assault, and thus be-

came satisfied beyond a reasonable doubt of the defendant's guilt, it was of course within their province to base their verdict upon that particular portion of her testimony, although they might have regarded the statements of the child on other points as of doubtful verity. Consequently, the verdict returned by the jury against the defendant is conclusive on appeal. We find no similarity between the case at bar and the case of *People* v. *McCullough,* 38 Cal. App. (2d) 387 [101 Pac. (2d) 531], decided by this court. In the McCullough case we said, in referring to the exactness that should be required in the testimony of a child witness in cases of this nature, "Such exactness might not be necessary if the story told by the prosecutrix found corroboration in other facts or circumstances, but such is not the case here." In the case with which we are now concerned, the story told by the prosecutrix finds corroboration in the testimony of Mr. Pippen as to the conduct of the defendant when taking pictures of the child, and as heretofore pointed out, the pictures themselves point unerringly to a sensual and lascivious state of mind on the part of the defendant. From an examination of the entire testimony of the complaining witness and a consideration of it in connection with the testimony of other witnesses, it does not appear that her testimony is so inherently improbable as to require or justify a reversal by this court, for it cannot be said that viewing the case as a whole an injustice has been done.

Finally, appellant urges a reversal on the ground that the court misdirected the jury in giving the following instruction:

"To constitute the offense charged in the information it is not necessary that the bare skin of the minor be touched.

"The touching, fondling, rubbing or feeling of the body, members or private parts of a minor, under the age of fourteen years, with the intent of arousing, appealing to and gratifying the lusts, passions and sexual desires of either the minor or the accused constitutes the offense charged in the information, even though such touching, fondling, rubbing or feeling was through the clothing of the minor."

It is the contention of appellant that this instruction disregards entirely the matter of lewd and lascivious touching, and that the jury may well have believed that there was a touching, but that the same was not lewd or lascivious. This claim is without merit. The instruction was in conformity

with the provisions of section 288 of the Penal Code. We have read the instructions given, and find the same, when considered as a whole, to be extremely fair. In fact the trial court cautioned the jurors in one of the instructions that they should scrutinize the testimony of the child with care to determine "whether her testimony is consistent with physical facts as shown by the evidence; whether she has been coached or otherwise, whether her testimony shows a knowledge of things and the use of words beyond the knowledge of children of such tender years, and from these, together with all the other rules laid down in these instructions for your guidance, you are to determine the weight, if any, you would give to the testimony of the little girl."

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is, affirmed.

York, P. J., and Doran, J., concurred.