[Crim. No. 1862.   Third Dist.   Apr. 28, 1944.]

THE PEOPLE, Respondent, v. SING CHAN, Appellant.

168

Walter F. Lynch and Grover W. Bedeau for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

ADAMS, P. J.—In an information filed by the District Attorney of Sacramento County defendant was charged with a violation of section 288a of the Penal Code, and after trial by a jury was convicted. Defendant's counsel then moved the court to set aside the verdict on the ground that the jury

were discharged from the case before the verdict was recorded in full upon the minutes by the clerk and read to the jury. Defendant also made motions to arrest the judgment and for a new trial. These motions were denied, and defendant has appealed, contending before this court that the trial court erred in refusing to admit certain evidence offered by defendant, that it committed prejudicial error in giving two instructions on circumstantial evidence, that it erred in instructing the jury on flight, and that defendant's motion to vacate the verdict should have been granted.

The evidence for the prosecution presented in the case was the testimony of two state police officers assigned to patrol Capital Park. Officer De Martini testified that on the date charged, while he and Officer Teske were patrolling that park, he saw the defendant lying on the grass with his head over the lower portion of a soldier's body, and with the soldier's penis in his mouth; that as he and Officer Teske approached they flashed their flashlights upon defendant and the soldier from a distance of about 15 feet; that the soldier was lying on his back with his hands above his shoulders close to his head, and defendant was lying flat on his stomach, his legs outstretched and his hands close to the soldier's body; that as he approached he stated, "You are under arrest," whereupon defendant got up and attempted to run away, but was tripped by De Martini and fell to the grass where he struggled with the officers and bit Teske·on the hand, but was finally subdued and handcuffed. The soldier was also taken into custody, and was turned over to the military police. The hour was about 10:35 p. m. Officer Teske testified to the same effect.

Defendant testified that on the night of the alleged offense he went into the park and sat on a bench to rest, then lay down on the grass and closed his eyes; that the soldier came along and made a suggestive gesture to him; that defendant said "no, no," and started to go, whereupon the soldier held him down, pushed him along for 60 or 80 paces, then lay down and held defendant with his right leg; that defendant could not get up; that there was a light flashed on them, whereupon the police officers came up; that they wore military clothes and he at first thought they were soldiers "coming to the help of him"; that they struck and beat him, knocking him unconscious; that he did not commit the act charged.

He was then asked if he was assaulted in San Francisco in the month of December, 1942, by a soldier during the nighttime, but objection to the question was sustained.

Defendant then called two witnesses who resided in San Francisco, and offered to prove by them that during the preceding month of December they saw an injury on defendant's head—the asserted purpose being to corroborate defendant's testimony that he was assaulted by a soldier in San Francisco and knocked unconscious. Objection to this testimony was also sustained on the ground that it was immaterial.

Defendant then called Dr. Otto G. Freyermuth, a specialist in mental and nervous diseases, who stated that on October 3d and October 13th prior to the trial which began on October 14, 1943, he made an examination of defendant, particularly along psychiatric lines; that he formed an opinion from the history of the case which he had obtained from the patient, that at one time he had had a definite fear complex, but that this fear complex was not present at the time of the examination. This he qualified by stating that there is "a fear in his makeup directed towards soldiers." The reason given for this opinion was the history given by defendant that in San Francisco he was assaulted by a soldier in December, 1942, from which he suffered a definite injury, and that thereafter when he came in contact with soldiers it would leave an apprehension, especially in the nighttime; that his conclusions were based upon an assumption that the statements made to him by the patient were true; that he based his opinion on what defendant told him and if the information was incorrect the opinion would be incorrect. Defendant then rested.

In rebuttal Officer De Martini testified that he saw no evidence of a struggle when he flashed his light upon the soldier and defendant; that he did not see the soldier's hands on defendant, that they were above his shoulders; that soldiers frequent the park in the evenings, especially in the summer months.

As to the alleged error of the trial court in refusing to allow defendant to prove that he was assaulted in San Francisco in December, 1942, during the nighttime, defendant asserts that this testimony would have supported and would have been the basis for the opinion of Dr. Freyermuth, and that the refusal of the court to admit testimony of such alleged assault debarred defendant from establishing his de-

fense to the charge, namely, that it was done involuntarily and without criminal intent, due to a fear phobia involving soldiers; that evidence of such fear complex was relevant to prove that what defendant did was done involuntarily and without criminal intent; that this would explain why defendant did not cry out for help, why he did not more vigorously resist the soldier's advances, and why he attempted to escape or resist arrest; and that this error was intensified by the court's refusal to allow the two witnesses to testify that they observed a bump on defendant's head during December, 1942.

The question asked by counsel for defendant, to which objection was sustained, was: "Were you assaulted some time during the month of December, 1942 in San Francisco, California, on Kearny Street, near the Hall of Justice, by a soldier during the night time?" Objection was made on the grounds of incompetency, irrelevancy and immateriality, and the objection was sustained. We find no error in this ruling. Appellant argues that it was pertinent to show a "fear complex" on the part of defendant. But from the testimony that defendant was so assaulted, it would not follow that such assault would produce a fear complex, nor would a "fear complex" on the part of defendant serve to explain why he committed the acts charged. A person is not relieved of responsibility for a criminal act because he acted through fear unless the fear was of immediate and imminent danger (*People* v. *Martin*, 13 Cal.App. 96, 105 [108 P. 1034]), and there was no showing here of any such danger to defendant. According to the testimony of defendant he had gone into the park and had lain down and closed his eyes. This was not conduct evidencing fear. He also said when asked if he went to the park to look for a soldier: "Yes, sometimes I been looking for soldiers." Also he said when asked if he was afraid of soldiers: "I am not afraid of soldiers, except I been attacked by soldiers before and I am afraid of them that way." There is no evidence that he cried out when, as he contends, he was seized by the soldier. Furthermore, Dr. Freyermuth, when called to testify in behalf of defendant, was allowed to testify that in his opinion defendant at one time had a definite fear complex, but he said that it was not present at the time of his examination which was on October 3d and 13th, just prior to the trial and less than two months after the alleged offense.

In his closing brief appellant says regarding the alleged error in refusing to admit this testimony that one purpose of same was to lay the foundation for a hypothetical question to be asked Dr. Freyermuth, and that such a hypothetical question must have, as its foundation, sworn testimony. But this would not render material matter otherwise immaterial, nor justify the admission of immaterial evidence. No hypothetical question was propounded to Dr. Freyermuth, but as he was allowed to testify that there was a fear or phobia in defendant's make-up, directed toward soldiers, particularly in the nighttime, and that he based his opinion upon a statement made to him by defendant that he had been assaulted by a soldier in San Francisco, we fail to see that defendant's testimony to this effect, if allowed, would have added anything material to his defense.

As to the contention that the testimony offered by defendant that in December, 1942, he had bumps or lumps on his head should have been admitted, such testimony was immaterial, irrelevant and incompetent. Had it been admitted it would have proven no more than that defendant had bumps on his head. It would not have tended to prove that said bumps were caused by an assault by a soldier or that defendant was afraid of soldiers, nor could it have thrown any light on whether defendant did or did not commit the offense charged.

Appellant's next contention is that the trial court erred in giving to the jury an instruction on circumstantial evidence, it being contended that there were no circumstances in the case worthy of the name. It is not argued that the instruction as given was erroneous in itself. However, assuming, but not deciding, that the giving of the instruction on circumstantial evidence was uncalled for in this case, nevertheless we are unable to see that the giving of same constituted error justifying reversal. (*People* v. *Soules,* 41 Cal. App.2d 298, 313 [106 P.2d 639]; *People* v. *Sberno,* 22 Cal. App.2d 392, 395 [71 P.2d 274]; *People* v. *Jackson,* 63 Cal. App.2d 586, 597, 598 [147 P.2d 94].)

As for appellant's argument that the giving of an instruction on flight after the commission of crime was erroneous because the evidence does not show flight, but only an attempt to flee, and that section 1127c of the Penal Code has no application when there is merely an attempt to flee, we are of the opinion that whether defendant fled or not was a

matter for the jury to determine. The evidence shows that when the officers said to the parties that they were under arrest defendant attempted to run away, that Officer De Martini tripped him, that defendant struggled and crawled on the grass in an effort to get away; that he "kept crawling."

While it has been said that where there is no evidence showing flight by a defendant, such instruction should not be given (*People* v. *Goodwin,* 202 Cal. 527, 540 [261 P. 1009]), in numerous cases the giving of same has been held proper or else nonprejudicial. (*People* v. *Hall,* 220 Cal. 166, 173 [30 P.2d 23]; *People* v. *Madison,* 3 Cal.2d 668, 675 [46 P.2d 159]; *People* v. *Wiley,* 33 Cal.App.2d 424, 428 [91 P.2d 907]; *People* v. *Lee Nam Chin,* 166 Cal. 570, 573 [137 P. 917]; *People* v. *Soldavini,* 45 Cal.App.2d 460, 462 [114 P.2d 415]; *People* v. *Lem Deo,* 132 Cal. 199, 204 [64 P. 265].) We have found no case in which a distinction has been made between a flight accomplished and one which was attempted and thwarted, or between a flight of several miles and a crawling of only a few feet. We think there was enough in the evidence in this case to constitute a foundation for the giving of the instruction of which complaint is made. Also, as was said in *People* v. *Sanchez,* 35 Cal.App.2d 231, 237 [95 P.2d 169], the instruction as given left all questions of fact solely for the jury, and did not assume the guilt of defendant, and that it must be presumed that the jury followed the law as presented, and, if flight was not proven, that it was not considered in reaching a verdict. On an examination of the entire case we cannot say that the alleged error has resulted in a miscarriage of justice. (Const., art. VI, § 4½.)

The remaining complaint of appellant is that the *clerk's transcript* fails to show that the verdict of the jury was recorded in full, or at all, upon the minutes of the court and then read to the jury, as recorded, and inquiry made of them whether it was their verdict as recorded (citing *People* v. *Laird,* 69 Cal.App. 511, 515 [231 P. 596]). Appellant cites sections 689 and 1164 of the Penal Code requiring such recordation, etc. The clerk's transcript here shows that a written verdict was rendered by the jury, and was endorsed filed October 15, 1943, the day of the trial; the reporter's transcript shows that upon the bringing in of the verdict the court, after inspecting it, instructed the clerk to read it

to the jury, which he did, and that when asked if this was their verdict they replied that it was. The record also shows:

"THE COURT: The Clerk will record the verdict. (Thereupon the Clerk recorded the verdict and re-read the same to the Jury as follows: 'The People of the State of California vs. Sing Chan. Verdict. We, the Jury in the above-entitled cause find the defendant Sing Chan guilty of the crime of violation of section 288-a of the Penal Code of the State of California, as charged in the Information. Irving J. Schwartz, Foreman.'

"Gentlemen of the Jury, is this your verdict?

"THE JURY: Yes."

We know of no requirement that these things must be shown by the clerk's transcript, and the foregoing record shows that the requirements of the Penal Code sections cited by appellant were fully complied with. But even in the absence of such a showing in the record, the presumption that official duty has been regularly performed (Code Civ. Proc., § 1963, subd. 15) would lead to the conclusion that the requirements of the law as to the recording of the verdict, etc., were complied with. Appellant's motion on this ground to have the verdict set aside and vacated was properly denied.

As we find no error in the record justifying reversal, the judgment and the orders appealed from are affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied May 11, 1944, and appellant's petition for a hearing by the Supreme Court was denied May 25, 1944.