[Crim. No. 2379. First Dist., Div. One. Apr. 12, 1946.]

THE PEOPLE, Respondent, v. MELVIN CARLSON, Appellant.

Alfred J. Hennessy for Appellant.

Robert W. Kenny, Attorney General, and Ralph W. Scott, Deputy Attorney General, for Respondent.

KNIGHT, J.—The defendant was found guilty by a jury of the crimes denounced by sections 288 of the Penal Code and 702 of the Welfare and Institutions Code. The substance of the charges made against him was that he had committed lewd and lascivious acts upon and with a female child nine years old. Motions for new trial and probation were denied; and this appeal was taken from the judgments of conviction and the order denying the motion for new trial.

The prosecution rested its case mainly on the child's testimony; and the evidence introduced by the defendant consisted of his own testimony wherein he denied having committed any of the illegal acts of which he was accused. Al-

though corroboration of the child's testimony was not essential to a conviction (*People* v. *Spillard,* 15 Cal.App.2d 649 [59 P.2d 887] ; *People* v. *Quinn,* 12 Cal.App.2d 752 [55 P.2d 277] ; *People* v. *Slaughter,* 45 Cal.App.2d 724 [115 P.2d 30]), the prosecution introduced evidence which substantiated her testimony on the point that the illegal acts charged had been committed; whereas the defendant's credibility as a witness was doubtless weakened by his admission on cross-examination that previously he had been convicted of the crime of perjury and had served a term therefor in the state prison. Defendant concedes that the evidence is conflicting, and he makes no claim that the child's testimony, if believed, is insufficient to sustain the convictions; but as the first ground of appeal he contends that the verdicts of the jury should be nullified upon the ground that as a matter of law the child's testimony is inherently improbable. This contention is not sustainable.

At the time of the alleged commission of the offenses defendant was employed as an attendant at a gasoline service station located on the corner of Ninth and Howard Streets in San Francisco. The station premises were divided into several separate service departments by walls or partitions, and off to one side but within the premises there was an automobile wash rack, adjoining which was a small room; and the door thereof opened off the rack. The walls of the room on three sides were built up to the ceiling, and the front wall was constructed of boards to a height of about six feet and above that was glass. Defendant's duties required him to take care of the automobile washing jobs and the room was used by him as a place to change his clothes. There was no furniture in the room, but it contained a large box, which defendant used as a seat and as a desk on which he made out his tags. The child lived on Natoma Street, between Eighth and Ninth Streets, a short distance from the service station. In going to and coming from school she usually walked through the station premises; and after school she often played with other neighborhood children in and about the station. In this way the defendant became friendly with her. On the morning in question the child started for school about nine o'clock and while passing through the station stopped to watch the defendant at work. She testified that she had not been standing there long when he took her in to the small room, closed the door, sat her down on the box and committed the sordid acts complained of. A detailed description of them and the man-

ner in which they were committed is unnecessary inasmuch as they were similar to those committed by the defendant upon and with a nine-year old girl in the case of *People* v. *Pollock*, 61 Cal.App.2d 213 [142 P.2d 328]; and it was there held that they constituted the crime denounced by section 288. (See, also, *People* v. *Lanham*, 137 Cal.App. 737 [31 P.2d 410].). Continuing, the child testified that after the defendant had commited these acts he gave her a small amount of money and some trinkets, and that she then proceeded on her way to school. When she arrived at the school the teacher asked her why she was late, and she told her teacher what had happened; whereupon the teacher immediately summoned a police officer. He took the child back to the service station, and in the presence of the defendant she showed the officer the room in which the acts were committed and identified the defendant as the man who committed them. The officer then took her directly to the office of the juvenile court doctor, who examined her private parts and found them to be in a condition brought about by the use of some external force. Furthermore the child testified that on four or five previous occasions the defendant had committed similar acts upon her in this same room, under like circumstances, and that on each of those occasions he had given her "a dime." Defendant admitted to the officer that the child stopped at the station that morning and that before she left he had given her ten cents, but he denied having been in the room with her. At the trial he admitted also that on several occasions he had given the child money; but he denied that he had ever committed any of the lewd acts charged against him. His explanation for having given her the money was that on each of those occasions the child had told him her mother had gone to work in the morning without leaving her any money with which to buy her school lunch. The child denied having made any such statements.

The law governing courts of appellate jurisdiction in the exercise of their authority to set aside jury verdicts, in cases involving sex crimes committed upon and with children upon the ground that the testimony of the complaining witness therein is inherently improbable has been restated on many occasions. In the recent case of *People* v. *Jackson*, 63 Cal. App.2d 586 [147 P.2d 94], several of the earlier decisions dealing with the subject are reviewed and approved. One of the leading decisions so reviewed and approved was ren-

dered in the case of *People* v. *Von Perhacs*, 20 Cal.App. 48 [127 P. 1048]. There the court first pointed out that the argument made by an appellant in support of such a contention is necessarily directed against the weight of the evidence and the credibility of the prosecuting witness; that invariably the same argument has been advanced to the jury; and that presumably the jury has given it the consideration it deserves. The court then goes on to say: "The weight of the evidence and the credibility of the witnesses are in the first instance peculiarly within the province of the jury when deliberating upon the guilt or innocence of a defendant; and once their verdict had been rendered the determination of such questions rests solely with the trial judge in passing upon a motion for a new trial. His conclusion as to the sufficiency of the evidence to support the verdict will not be disturbed by this court save in those rare cases where it obviously appears that the testimony upon which the conviction was had is in and of itself, or when considered in conjunction with the undisputed facts of the case, so inherently improbable as to be impossible of belief, and therefore must be considered to be in effect no evidence at all." (Citing a long list of cases.)

Another of the earlier decisions so reviewed and approved was rendered in the case of *People* v. *Lewis*, 18 Cal.App. 359 [123 P. 232]. There the court first stated that it would seem almost incredible that the defendant could, in the midst of the surroundings disclosed by the evidence, have committed the series of illegal acts with the child (as she testified) over so long a period and no one observed an incriminating circumstance tending to corroborate her story; but continuing the court said: "We must assume, in the absence of something in the record upon which to base a contrary opinion, that the jury reached a verdict with full realization of their sworn duty, free from passion and prejudice. We must also assume that the learned trial judge was satisfied with the verdict or he would have granted the motion for a new trial. Cases have occurred, some are cited, where the appellate court has felt itself constrained, in the interest of justice, to override the conclusions of jury and trial court, but such cases are rare, and occur only where the uncorroborated testimony of the complaining witness is so obviously and so inherently improbable as to leave the court no recourse, without self-stultification, except to reverse the judgment. But this obvious and inherent improbability must, however, very plainly appear be-

fore the reviewing court should assume the functions of the trial jury."

Another case so reviewed with approval is *People* v. *Kuches,* 120 Cal. 566, 569 [52 P. 1002], wherein the court said: "by denying the motion for a new trial the learned judge of the court below has manifested his satisfaction with its sufficiency (the sufficiency of the evidence); his opportunity to form a correct conclusion upon the weight and effect of the evidence was far better than ours, and his conclusion cannot be disturbed." The court in the Jackson case also comments on some five other earlier cases, but it would seem quite unnecessary to repeat here what has been there said. Lately the Supreme Court was asked to set aside a verdict of guilty in a case based on section 288 of the Penal Code upon the ground that the testimony of the complaining witness was inherently improbable (*People* v. *Huston,* 21 Cal.2d 690 [134 P.2d 758]), and in refusing so to do the court in part said: "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions."

█ Viewed in the light of the foregoing legal principles, the record in the present case fails to disclose any fact or circumstance which would justify this court in holding, as a matter of law, contrary to the conclusion reached by the jury and the trial judge, that testimony given by the child was and is inherently improbable. As was said in *People* v. *Pollock, supra,* in considering the facts of that case, there is nothing in the nature of the acts themselves, nor in the manner in which they were committed, which would demonstrate that it was physically impossible for the defendant to have committed them as claimed by the child, and the fact that they were of a revolting character does not prove that it was inherently improbable that the defendant committed them. (*People* v. *Wasenius,* 113 Cal.App. 106 [297 P.966].) Moreover, the law is well settled that a case does not fall within the inherent improbability class merely because the testimony discloses unusual circumstances. (*People* v. *Huston, supra; People* v. *Collier,* 111 Cal.App. 215 [295 P. 898].)

█ The exhaustive cross-examination of the child developed several inconsistencies and contradictions which defendant contends render her entire testimony unworthy of belief; but clearly all of these were matters for the consideration of

the jury in determining the weight to be given to her testimony. (*People* v. *Jackson, supra.*) Even testimony which is subject to justifiable suspicion does not justify a reversal of a judgment, for it is the exclusive province of the jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. (*People* v. *Huston, supra.* ▮ Nor did the variances between the testimony given by the child at the trial and that given by her at the preliminary examination of themselves, as a matter of law, render her entire story unbelievable. (*People* v. *Schultz,* 49 Cal.App.2d 38 [120 P.2d 893].) As said in some of the decisions, very seldom does a record in a case of this type come before an appellate court that does not show some discrepancies or contradictions in the testimony of the complaining witness. Here the child did not deviate in any material respect from her original story as to the commission of the lewd acts by the defendant, nor as to the manner in which they were committed. If, therefore, the jurors believed her testimony in the main or if they believed only that portion bearing on the immediate circumstances establishing the commission of the lewd acts by the defendant, it was the province of the jury to base their verdict upon that particular portion of her testimony, although they might have viewed the child's statements pertaining to incidental matters with some reservations as to their accuracy. (*People* v. *Schultz, supra.*)

▮ It appears from the evidence that on this particular morning there were three other attendants working in different service departments of the station, and defendant argues that it is incredible that under such circumstances he would attempt to commit the acts charged in this nearby room. Substantially the same argument was advanced in situations somewhat similar to the one here present in *People* v. *Huston, supra,* and *People* v. *Grant,* 53 Cal.App.2d 286 [127 P.2d 567], and the courts there held in substance that the fact that at the time the acts were said to have been committed there were other persons in close proximity did not make it incredible that such a thing could happen, nor justify a reviewing court in declaring as a matter of law that the child's testimony is inherently unbelievable or even improbable.

▮ Defendant asserts that there was a conspiracy on the part of the assistant district attorney who prosecuted the case, a juvenile court officer (Mrs. Foley), and the child's mother, "to coach" the child and "have her testify falsely to things

that had not occurred and acts that the defendant had not committed.'' Such assertion is based upon certain categorical answers given by the child in response to leading questions asked on cross-examination. An examination of the entire record shows, however, that when the child gave those answers she was evidently confused and did not understand the questions or the purport thereof. In this connection it appears that before going into court at the opening of the trial the child related to the persons named the manner in which the criminal acts were committed, and after having done so she was told by the court officers that she should so state in court when questioned about the matter; and that at all times she should tell the truth. There were positive denials that any of the persons named had ever coached the child, and the record is entirely barren of any testimony tending to show that any of them had any motive for so doing. Admittedly none of them ever knew the defendant prior to his arrest, and there is not the slightest suggestion that any of them ever made any sort of a demand upon him either before or after his arrest. The members of the jury doubtless took into consideration all of the circumstances surrounding the charges of coaching, and as indicated by their verdicts of guilty they were satisfied that the charges were groundless. Incidentally it appears from the record that the child's intelligence test showed that she was somewhat below the average standard for a child her age, but it also appears that before she was permitted to testify she was thoroughly questioned by the trial judge as to her understanding of the oath she was about to take and that at no time during the trial did counsel for defendant challenge the child's competency or qualifications as a witness.

It should be stated also that the jury was fully and correctly instructed as to all elements of the doctrine of reasonable doubt, and as to its unrestricted right to pass upon the credibility of all witnesses and the weight to be given their testimony; furthermore it was clearly and properly instructed that by reason of the fact that charges of the nature involved in this case can be easily made and often are not easy to disprove, that it was the duty of the jury to examine and treat with great care and caution ''the testimony of this child.'' In view of the foregoing state of the record it becomes apparent that any interference with the conclusion reached by the jury on questions of fact would be wholly unwarranted.

■ Defendant charges also that the trial judge was guilty of misconduct in unduly interrupting the cross-examination of the child and propounding certain questions to her which were improper. The record shows, however, that such interruptions occurred only when it became obvious that the child was bewildered and did not understand the questions; and that the sole reason the trial judge interrupted at all was to ascertain the truth. Considering the tender age of the child and the surrounding circumstances under which she testified, it cannot be successfully maintained that the trial judge was guilty of misconduct. Nearly all of the objections made to the trial judge's questions seem to be that they were argumentative, and it appears that in most instances when such objection was made the question was reframed. The other objections interposed were without merit. At no time during the course of the trial did counsel make any assignments of misconduct nor did he ask that any of the questions propounded by the trial judge or the answers given in response thereto be stricken out.

■ Defendant's final contention is that the court erred in giving an instruction on circumstantial evidence. This contention is based upon the assertion that no circumstantial evidence was introduced. The record does not support this assertion. While it is true that the question of defendant's guilt depended mainly upon direct evidence consisting of the child's testimony, there was some circumstantial evidence introduced of a corroborative nature. In any event it has been repeatedly held that the giving of an instruction on circumstantial evidence which correctly states the law, in a case resting on direct testimony, does not justify a reversal unless it clearly and definitely appears that in some way defendant was actually prejudiced thereby. (*People* v. *Soules,* 41 Cal.App.2d 298 [106 P.2d 639] ; *People* v. *Sing Chan,* 64 Cal.App.2d 167 [148 P.2d 81], citing other cases.) Here no complaint is made that the instruction did not correctly state the law; nor has any attempt been made to point out, nor does the record show, that the instruction as given operated to defendant's detriment or disadvantage.

The judgments of conviction and the order denying the motion for new trial are and each of them is affirmed.

Peters, P. J., and Ward, J., concurred.